Hon. FÉLIX P. POCHÉ,
Hon. ROBERT B. TODD,
Hon. CHARLES E. FENNER,[*]  } *Associate Justices.*
Hon. THOMAS C. MANNING,

---

35 993
46 848
35 993
f104 455
104 456

35 993
123 481

### No. 102.

### SUCCESSION OF JAMES MARKS, JR.

### REBECCA L. MARKS VS. MATHILDA R. MARKS, EXECUTRIX.

The *légitime* of a father or mother, or both, in the testamentary succession of a child deceased without posterity, is *one-third* and not *one-fourth*, and this to the exclusion of brothers and sisters. . The disposable portion in such a case being two-thirds only. Cole vs. Cole, 7 N. S. 414, overruled.

APPEAL from the First District Court, Parish of Caddo. *Taylor, J.*.

---

*R. J. Looney* for Plaintiff and Appellant.

*Land & Land* for Defendant and Appellee :

When the deceased leaves a father or mother, he or she is forced heir for the one-fourth of the estate. And the child may dispose of three-fourths by last will and testament. Cole vs. Cole, 7 N. S. 414; Theall vs. Theall, 11 La. 429 ; Barbet vs. Roth, 14 An. 381.

---

[*] Absent during the whole of this term.

This has been a rule of inheritance in Louisiana since 1829, and the doctrine of *stare decisis* applies.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action by a legitimate mother for her *légitime* from the testamentary succession of her son, who has died leaving brothers and sisters and a wife, instituting the latter his universal legatee. The mother claims that *légitime* to be *one-third* of the estate. The defense is, that it is *one-fourth* and no more.

The District Judge, dealing with the question as *res nova*, thought that the *légitime* should be *one-third*, but reluctantly yielding to the doubtful authority of a ruling made more than half a century ago, rendered judgment for *one-fourth* only.

It is not correct to say that it is established by the jurisprudence of this State that the *légitime* in such a case is *one-fourth*.

The only case in which the question was really presented, is that of Cole vs. Cole, 7 N. S. 414. It is true that the Court there decided that the *légitime* of the only immediate ascendant, *the mother*, was one-fourth ; but the mere reading of the opinion shows that the Court, composed of three Judges, two only of whom participated in the decision of the cause, did not grasp and solve the difficulty as might have been done. Far from reconciling three Articles of the Code, the Court assumes to eliminate from it the last of them, because it was thought incompatible with the previous ones, although it was couched in negative terms and was one of public order and good morals. In its inability to cause the two Articles to operate harmoniously, the Court declares : " we cannot untie the knot : we must cut it." The cutting resulted in the excision from the Code of the provisions of the last enacted or adopted Article on the subject of the *légitime* of father or mother, or both. The reason is unsatisfactory and not binding.

It cannot be pretended that the ruling then made was ever subsequently followed.

In the Theall case, 11 L. 431, decided eight years later, it is not mentioned or even alluded to. There was no occasion for it. The Court allowed *one-fourth* to the mother, not because she was not entitled to *one-third*, but because she had claimed *one-fourth* only. The contention was as to the obligation of the mother of opting between a legacy and the *légitime*, which she herself had represented as being *one-fourth*.

In the Grover case, 7 An. 173, the *third* could not have been allowed, for the obvious reason that the child having died intestate, her succession was a legal one.

In the Barbet case, 14 An. 381, the mother sued to reduce the universal legacy of her daughter to the latter's husband, to the disposable portion, which the Court declared to be *two-thirds*, allowing the mother *one-third* as her *légitime*.

For declining to apply the ruling in the Cole case, the Court, through its organ, declared that "the case must be examined in reference to the facts on which it was decided."

Mr. Justice Buchanan, in his lucid, considerate, and well reasoned concurring opinion takes the proper view of the law governing in such cases.  He regards "the doctrine enunciated in the Cole case as contrary to Article 1481 of the Code" of 1825, and unequivocally declares :

"There is a very simple and obvious way of reconciling Articles 899 and 900 with Article 1481 of the Code, which is to consider the first as a statute of distribution of intestate successions, the second, a statute of distributions in successions testamentary.   One is an allotment made of a man's estate, when he has not chosen to make any allotment himself.   The other, a restriction upon the disposing power of a man over his own property by testament.   The doctrine of Cole, if adhered to, would expunge Article 1481 from the Code.   The doctrine is substantially as follows : Article 1481 is irreconcilable with Articles 899 and 900; therefore, it must yield to those Articles, and consequently the *légitime* of a father or mother of a decedent, who leaves a brother or brothers is, in no case, more than *one-fourth* of the succession.

"Now, besides the fundamental error in the premises, the want of incompatibility of the Articles, the conclusion is erroneous, even if the premises were correct; for it is a rule of interpretation, that, when two Articles of the Code cannot be reconciled, the last in order and highest in number, prevails over the other."

That reasoning of the learned Justice is unanswerable.

But, besides, it can very plausibly be said, that the philosophy, the policy of the law, is adverse to the announcement in the Cole case. The reason for which the law allows *one-fourth* only to the father or mother, in an intestate succession, is that, what remains thereafter accrues to the collateral heirs of deceased, who the law presumes will provide more amply for the father or mother, should the fourth prove insufficient.

Such is not the case however in testamentary successions, in which the testator undertakes to derogate from the disposition which the law would have made of his estate at his death, in the absence of a will, and substitute his will thereto.   In the apprehension that the testator might dispose of his property in favor of a stranger, who would not have for the mother or father the same kindly feeling which other children,

by nature, would have, the law fixes that position at *one-third* instead of *one-fourth.*

. There can be no possible escape from the operation of Article 1481, now Article 1494, which unequivocally reads in *negative* terms :

" Donations *inter vivos*, or *mortis causa*, cannot exceed *two-thirds* of the property, if the disposer, having no children, leave a father, mother or both."

It may be that the law giver might have provided more amply in favor of *both*, and that the omission is to be deplored ; but with that we have nothing to do. We can only say that he has well done by increasing the share of father or mother to *one-third* in testamentary, from *one-fourth* in intestate successions.

. This construction results in the occision of a lurking *lusus curiæ*, in the undoing of the knot, the reconciliation of important Articles of the Code to which violence had unnecessarily been done, the termination of an abnormal condition of things, and the formal retention in that main body of our laws of a wise and salutary provision which the decision in the Cole case had without warrant unmercifully expunged from it.

The judgment of the District Court recognized plaintiff as a forced heir, but did not allow her the full *quantum* to which she is entitled. It must be amended.

It is, therefore, ordered and decreed that the judgment appealed from be amended by striking therefrom the word *"fourth"* and substituting thereto the word " *third*," and that thus amended, it be affirmed with costs in both Courts.