(86 South. 786)

No. 24003.

Succession of GREENLAW.

(Dec. 4, 1920.)

*(Syllabus by Editorial Staff.)*

1. Descent and distribution ⬅58—Husband and wife ⬅273(1)—Succession; statute giving undisposed of share of estate of deceased spouse without ascendants or descendants to surviving spouse refers only to community and not separate estate.

Under Rev. Civ. Code, art. 915, as amended by Act No. 57 of 1910, and Act No. 80 of 1916, particularly in view of Const. art. 31, requiring the object or purpose of every statute to be expressed in its title, where husband or wife dies without ascendants or descendants, and without having disposed of community property by last will and testament, the undisposed of share in the community property shall be inherited by the survivor in full ownership; Act of 1916 referring only to the share of the deceased spouse in the estate of the marital community, not to his or her separate estate.

2. Constitutional law ⬅48 — Construction should be adopted favoring validity of statute.

A rule of interpretation of an ambiguous statute is that, if one interpretation would make it valid legislation and another would violate the Constitution, the interpretation which makes it valid legislation should be adopted.

3. Descent and distribution ⬅23—Succession; mother of deceased wife a forced heir not to be deprived by donation or bequest of share of inheritance, but brothers and sisters of wife must contribute to such legacy.

Under Rev. Civ. Code, arts. 1495, 1505, the surviving mother of a wife who died without children was her forced heir, and could not be deprived by the wife's donation or bequest of $25,000 to her surviving husband of any part of the share which she, the mother, inherited in the estate of her deceased daughter, but the brothers and sister of the wife were not her forced heirs, and were liable to contribute to the payment of the legacy bequeathed to the surviving husband.

4. Descent and distribution ⬅23—Succession; surviving mother of deceased wife inherited one-fourth and brothers and sister three-fourths of her separate estate; "legitime;" "reserved portion."

Under Rev. Civ. Code, arts. 903, 904, 911, 1493, 1494, 1495, surviving mother of deceased wife, who by will made a legacy to her husband of $25,000, *held* to have inherited one-fourth, and the two brothers and sister of the deceased wife, who died without children, three-fourths of her separate estate, the "legitime" or "reserved portion" of a decedent's estate, applied to a father or mother, meaning that portion of the estate of which she cannot disinherit father or mother without legal cause. (Per O'Niell, Sommerville, and Provosty, JJ.)

[Ed. Note.—For other definitions, see Words and Phrases, Légitime.]

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

In the matter of the succession of Mrs. Kate McCan Greenlaw, wherein Edward R. Greenlaw, her surviving husband, as executor, filed account, and proposed to close the succession by paying debts, reserving to himself a special legacy of $25,000, and by dividing the remainder of the estate equally between himself and the mother of his deceased wife. From judgment against the executor rejecting the settlement proposed by him, he and his deceased wife's brother and sister and the administrator of the succession of a de-

ceased brother of the deceased wife appeal. Judgment amended and affirmed.

Hall, Monroe & Lemann and William S. Hero, all of New Orleans, for appellants Cobb, McCan, and Whitney-Central Trust & Savings Bank.

Edward B. Ellis and Meyer S. Dreifus, both of New Orleans, for appellant Greenlaw.

John F. Tobin, of New Orleans (Frank Soule, of New Orleans, of counsel), for appellee Mason.

O'NIELL, J. Mrs. Kate McCan Greenlaw, whose succession is in dispute, was survived by her husband, Edward R. Greenlaw, her mother, Mrs. Mary G. Mason, two brothers, David C. and Charles P. McCan, and a sister, Mrs. Fannie McCan Cobb. David C. McCan died a few months after Mrs. Greenlaw's death, and his succession is represented in this suit by an administrator, the Whitney-Central Trust & Savings Bank.

Mrs. Greenlaw left a will, in which she bequeathed $25,000 to her husband and appointed him executor. The will contains no other bequest.

Although the exact value of the estate is not shown in the record, it appears to be far more than $100,000. It consists of real estate in New Orleans, stocks, bonds, promissory notes and accounts receivable, cash in bank, etc., all of which belonged to the separate estate of Mrs. Greenlaw. There was no property of the marital community.

The surviving husband, as executor, having collected more than $72,000 in cash, filed an account, in which he proposed to close the succession by paying the debts and reserving the special legacy of $25,000, and by dividing the remainder of the estate equally between himself and the mother of his deceased wife.

The mother, Mrs. Mary G. McCan, acquiesced in the proposed settlement, except that she insisted that the estate, of which she should receive half, should include the amount of the legacy bequeathed to the surviving husband. In the alternative, that is, in the event the court should hold that the estate should not be divided equally between herself and the surviving husband of the deceased, Mrs. McCan claimed, as a forced heir of the deceased, one-third of the estate, including the amount of the legacy bequeathed to the surviving husband.

The brother and sister, and the administrator of the succession of the deceased brother, of the deceased, Mrs. Greenlaw, opposed the settlement proposed by the executor, and opposed also the alternative demand of Mrs. McCan. These opponents contended that Mr. Greenlaw was not an heir of his deceased wife, and was therefore not entitled to receive anything from her succession except the legacy bequeathed to him; that the mother, Mrs. McCan, inherited only one-fourth, not one-third, of the estate; and that they, opponents, inherited three-fourths of the estate.

Judgment was rendered against the surviving husband, rejecting the settlement proposed by him as executor, and declaring that he did not inherit as an heir of his deceased wife, and was therefore not entitled to anything more than the legacy of $25,000. The alternative demand of Mrs. McCan was allowed, and she was therefore decreed entitled to one-third of the estate, including the amount of the legacy bequeathed to Mr. Greenlaw, but deducting the debts of the succession. The demand of the three other opponents, the brother and sister and the succession of the deceased brother of Mrs. Greenlaw, was allowed to the extent of two-thirds, instead of three-fourths of the estate, less two-thirds of the debts of the succession and less also the entire amount of the legacy bequeathed to the surviving husband of the deceased.

The executor and the brother and sister and the administrator of the succession of

the deceased brother of the deceased Mrs. Greenlaw, have appealed; and the mother, Mrs. McCan, answering the appeals, prays that, if the demand of the executor, as appellant, should not be allowed, the judgment, allowing her a third of the estate, should be affirmed.

The question in contest between the surviving mother and husband of the deceased, on the one side, and the brother and sister and the succession of the deceased brother of the deceased, Mrs. Greenlaw, on the other side, is whether the residue of the estate was inherited entirely by the surviving mother and husband of the deceased, in the proportion of one-half for each, or was inherited entirely by the surviving mother and brothers and sister of the deceased. It is not disputed that, if the surviving husband is an heir of the deceased, he is entitled to one half of the estate and the surviving mother the other half. On the other hand, if the surviving husband is not an heir, then the question in contest between the surviving mother, on the one side, and the brother and sister and the succession of the deceased brother, on the other side, is whether the surviving mother inherited one-third and the surviving brothers and sister two-thirds, or the surviving mother inherited one-fourth and the surviving brothers and sister three-fourths, of the residue of the estate. If it should be decided that the surviving husband does not inherit any part of the separate estate of his deceased wife, we must then decide also the question whether the legacy of $25,000 shall be paid before dividing the residue between the surviving mother, on the one side, and the surviving brother and sister and the succession of the deceased brother, on the other side; for the surviving mother claims, in her alternative demand, that she is a forced heir and that therefore the legacy must not be taken out of her share of the estate, whether she be entitled to one-third or only one-fourth.

The claim of the surviving husband that he inherited half of the estate is founded upon the last clause in Act No. 80 of 1916, p. 201, viz.:

"An act to amend and re-enact Act No. 57, approved June 29, 1910, entitled: 'An act to amend and re-enact article 915 of the Revised Civil Code of 1870.'

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that Act 57, approved June 29, 1910, entitled 'An act to amend and re-enact article 915 of the Revised Civil Code of 1870,' be amended and re-enacted so as to read as follows:

"Article 915. In all cases, when either husband or wife shall die, leaving no ascendants or descendants, and without having disposed by last will and testament, of his or her share of the community property, such undisposed of share shall be inherited by the survivor in full ownership. But in the event the deceased should leave descendants his or her estate shall be inherited by them in the manner now provided for by law. But should the deceased leave no descendants, but a father and [or] mother, or both, the estate shall be divided into two equal portions, one of which will go to the father and mother, or the survivor of them, and the other portion to the surviving spouse.

"Sec. 2. Be it further enacted, etc., that all laws or parts of laws in conflict or inconsistent with the present act be and the same are hereby repealed."

The first sentence in the act of 1916 is an exact reproduction of the act of 1910. The amendment of 1916 consisted in adding the two sentences, each beginning with the word "but," and in adding the second section.

Before it was amended by the act of 1910 (No. 57) article 915 of the Revised Civil Code (which article was originally enacted as section 1 of Act No. 152 of 1844) read as follows:

"Art. 915. In all cases, when either husband or wife shall die, leaving no ascendants or descendants, and without having disposed by last will and testament, of his or her share in the community property, such share shall

be held by the survivor in usufruct during his or her natural life."

It is to be observed that the only change made by the amendment of 1910 was in substituting, for the words "held by the survivor in usufruct during his or her natural life," the words "inherited by the survivor in full ownership."

The title of Act 57 of 1910 was, as stated in the act of 1916, "An act to amend and re-enact article 915 of the Revised Civil Code of 1870." Article 915 of the Code, both before and after the amendment of 1910, referred only to property of the marital community, not to the separate property of the deceased spouse.

Counsel for Mr. Greenlaw contend that the last sentence in the amending statute of 1916, viz. "But should the deceased leave no descendants, but a father and mother, or both," etc., should be read as if it stood alone, and without reference to the first sentence, or statute amended. And they argue that, if so read, the word "estate," in the last sentence in the statute of 1916, would include the separate estate of the deceased spouse, as well as his or her share in the community estate. Counsel for the brother and sister, and for the succession of the deceased brother, of the deceased, Mrs. Greenlaw, contend that the last sentence in the amending statute of 1916, "But should the deceased leave no descendants, but a father and mother, or both," etc., must be read and construed with reference to the first sentence, or statute amended; and that, when so read and construed, the word "estate," in the last sentence of the amending statute, means only the share of the deceased in the community estate. That construction is in strict accord with the context; for the last sentence, like the second sentence, is connected with the first sentence, or statute amended, by the conjunction "but"; and the second and third sentences must therefore be read as a con-

tinuation of the first sentence, or statute amended, the same as if these new clauses were separated by a semicolon, instead of a period. Undoubtedly, when read as a continuation of the first sentence, or statute amended, the word "estate," in the last sentence of the amending statute of 1916, refers only to the community estate, not the separate estate of the deceased spouse; because the first sentence, which is only a reproduction of the statute amended, refers only to the community estate, not to the separate estate of the deceased spouse.

A study of the history and gradual evolution of the right of the surviving spouse, with regard to the share of the deceased spouse in the property of the marital community, leads to the conclusion that the statute of 1916 was intended to apply only to the community estate, not to the separate estate of a deceased husband or wife. Before the adoption of Act No. 152 of 1844 (the two sections of which were embodied as articles 915 and 916, respectively, in revising the Civil Code in 1870), the surviving spouse had no right of usufruct upon the share of the deceased spouse in the property of the marital community. The second section of Act 152 of 1844 (which section was embodied as article 916 in the Revised Civil Code) declared that, if the deceased husband or wife left issue of the marriage with the surviving spouse, and had not disposed by last will of his or her share in the community property, the surviving spouse should hold in usufruct during his or her lifetime such share of the community as might be inherited by the surviving issue of the marriage, which usufruct, however, should immediately cease if the surviving spouse should marry again.

The manifest purpose of the enactment of 1844, therefore, was to place the usufruct in favor of the surviving husband or wife of the deceased, not only upon such share of the community property as might be in-

herited by surviving issue of the marriage, but also upon such share of the community property as might be inherited by brothers or sisters or more remote collateral relations of the deceased spouse. That purpose was made plain by imposing the condition, as the only condition for the right of usufruct granted by section 1 of the statute, that the deceased should leave "no ascendants or descendants." The supposition of the Legislature was that, if the deceased husband or wife should leave either an ascendant or a descendant heir, the surviving brothers or sisters or more remote collateral relations of the deceased would not inherit anything. But the Legislature overlooked the fact that brothers or sisters or descendants of them might inherit jointly with a surviving parent, or with both surviving parents, of the deceased. As a general rule, in the order of inheritance, the rights of collateral relations of the deceased are subordinate to the rights of forced heirs, but as an exception to that rule articles 903, 904, and 911 of the Revised Civil Code (which were, respectively, articles 899, 900, and 907 of the Code of 1825) declare that, if a person dies leaving no descendants, but a father and mother (who are forced heirs) and brothers and sisters or descendants of the latter (who are not forced heirs), the surviving parents inherit one half of the estate, and the surviving brothers and sisters, or descendants of them, inherit the other half; and that, if a person dies leaving no descendants, and leaving only one surviving parent and brothers and sisters, or descendants of them, the surviving parent inherits one-fourth of the estate and the surviving brothers and sisters, or descendants of them, inherit three-fourths of the estate. By overlooking these provisions of the Code, the Legislature, in enacting the statute of 1844, failed to accomplish the purpose of imposing the usufruct, in favor of a surviving husband or

wife, upon that share of the community estate which would be inherited by brothers and sisters or their descendants, in a case where the deceased spouse left no descendants, but left a surviving father or mother, or both, and left also a brother or sister or a descendant of a deceased brother or sister. This hiatus in the statute of 1844 came to light in the case of the Succession of Lee, 9 La. Ann. 398 (in 1854). The deceased, Lee, was survived by his wife and by his mother and brothers and sisters. The widow claimed a usufruct on three-fourths of the share of her deceased husband in the community property, being the three-fourths inherited by the surviving brothers and sisters of the deceased. It was recognized and acknowledged, in the opinion of the court, that it was very likely the intention of the Legislature to impose the usufruct on such share of the community property as might be inherited by brothers and sisters or more remote collateral relations of the deceased, and that the usufruct could not be excluded by an ascendant heir except as to the share which such ascendant should inherit. But the opinion of four of the five justices was that, inasmuch as the first section of the statute of 1844 gave the right of usufruct to the surviving spouse in the event of there being neither ascendant nor descendant heirs of the deceased, the implication was that the right of usufruct was not given to the surviving spouse in the event of there being either a surviving ascendant or descendant heir. That conclusion was founded upon the opinion that the language of the statute was not ambiguous, and that there was therefore no occasion for considering the object or purpose intended to be accomplished by the statute.

The hiatus in the first section of the Act No. 152 of 1844 also occurred in the first amending statute (Act No. 57 of 1910), by which the Legislature declared that a sur-

viving husband or wife, instead of holding in usufruct, should inherit in full ownership the share of the deceased spouse in the property of the marital community, if the deceased spouse left neither an ascendant nor a descendant heir. In Lehman v. Lehman, 130 La. 960, 58 South. 829 (in 1912), it was observed that the statute of 1910 did not accomplish the purpose of allowing a surviving husband or wife to inherit the share of the deceased spouse in the community property, in preference to a surviving brother or sister of the deceased spouse, if the deceased was survived also by his or her father or mother. The deceased, Lehman, was survived by his wife, his father and a brother. There was no descendant heir. The widow and the brother of the deceased conceded that the father had inherited a fourth of the estate, as a forced heir. The widow claimed the share of the deceased in the community property, by virtue of Act No. 57 of 1910. The brother claimed three-fourths of the entire estate of the deceased, by virtue of article 904 and the last paragraph of article 911 of the Civil Code, declaring that, if a person dies leaving no descendant heir, and is survived by his father or mother and brothers and sisters or their descendants, the brothers and sisters or their descendants shall inherit three-fourths, and the surviving parent one-fourth, of the estate. It was stated in the opinion that the court felt bound by the interpretation given in the Succession of Lee, 9 La. Ann. 398, of the first section of Act 152 of 1844; because, in amending and re-enacting the statute, in 1910, the Legislature had not made any change, except the substitution for the words "held by the survivor in usufruct during his or her natural life" the words "inherited by the survivor in full ownership." It was pointed out in the opinion that, according to the ruling in the Succession of Lee, if the deceased husband or wife

be survived by an ascendant heir, the surviving wife inherits to the exclusion of brothers and sisters of the deceased, whereas, if the deceased husband or wife be survived by an ascendant heir, the brothers and sisters of the deceased inherit to the exclusion of the surviving spouse; so that, in a contest between the surviving spouse and a brother or sister of the deceased, the question as to who shall inherit the share of the deceased in the community property depends upon whether there is or is not a surviving ascendant heir—a circumstance that should be not at all relevant to the issue between the surviving spouse and a brother or sister of the deceased.

It is very likely that the purpose of the amendment made by the Act No. 80 of 1916 was: First to leave in full force and effect article 916 of the Civil Code (which was originally the second section of Act No. 152 of 1844); and, second, to make some provision for the surviving husband or wife in a case such as Lehman v. Lehman and the Succession of Lee. Be that as it may, there is no reason to believe that the Legislature intended, by the amending statute of 1916, to extend the statute amended so as to allow a surviving husband or wife to inherit half of the separate estate of the deceased spouse, in the event of their being a surviving father or mother or both. To give the statute that construction would render the first and the last sentence altogether inconsistent and irreconcilable, because, according to the interpretation of the language of the first sentence, given in the Succession of Lee and in Lehman v. Lehman, the surviving husband or wife could not inherit anything—not even a share in the community property—if the deceased spouse should be survived by an ascendant heir more remote than the father or mother; and yet, under the last sentence of the statute, the surviving spouse would inherit one-half of the en-

tire estate if the deceased spouse should be survived by ·a father or mother or both.

[1, 2] We are constrained to hold that the amendment made by the Act No. 80 of 1916 refers only to the share of the deceased spouse in the estate of the marital community, not to the separate estate of the deceased spouse. Not only does that interpretation accord with the context and with the manifest object and purpose of the amendment, but the amendment would seem to violate article 31 of the Constitution if we should construe it as referring to the separate estate of the deceased spouse. One of the rules of interpretation of an ambiguous statute is that if one interpretation would make it valid legislation and another would violate the Constitution, the interpretation which makes valid legislation should be adopted. It cannot be disputed that the word "estate" in the last sentence of the amendment of 1916 is ambiguous, in so far as it may mean the entire estate or may refer to the community estate, which .is the only estate referred to in the first sentence, or in the statute amended. Article 31 of the Constitution requires that the object or purpose of every statute shall be expressed in its title. It is not expressed or even intimated in the title of Act No. 80 of 1916 that its object or purpose is to deal with the separate estate of a deceased husband or wife, or with any other subject than that which was dealt with in the statute amended, i. e. the share of a deceased husband or wife in the community estate. The title of the act is simply "An act to amend and re-enact Act No. 57, approved June 29, 1910, entitled: 'An act to amend and re-enact article 915 of the Revised Civil Code of 1870.'" The title of the amended statute (Act 57 of 1910) did not contain any expression or intimation that the object or purpose was to deal with the separate estate of a deceased husband or wife, or to deal with any other property than the community estate. The title was simply "An act to amend and re-enact article 915 of the Revised Civil Code of 1870." The title of Act No. 152 of 1844, p. 99, which became articles 915 and 916 of the Revised Civil Code, was simply "An act relative to community property." It is certain that, if that statute had dealt with any other than community property, it would have been unconstitutional in so far as it dealt with such other property. The title of the amending act of 1910, and the title of the amending act of 1916, which title described the subject dealt with only by reference to the number of the article of the Code, was sufficient to embrace any legislation upon the subject dealt with in the article referred to. But, as this court said in Wisner's Curator v. Mayor & City Council of Monroe, 25 La. Ann. 598, and in State v. American Sugar Refining Co., 106 La. 553, 31 South. 181, and in State v. Walters (on rehearing), 135 La. 1096, 66 South. 373, an act entitled an act to amend and re-enact a certain article of the Code or section of the law, by reference only to the number of the article or section to be amended, and without mentioning in. the title the subject-matter of the amendment proposed to be made, must be confined in its scope to the subject-matter dealt with in the article or section proposed to be amended. In other words, when the title of an amending statute describes the act merely by mentioning the number of the statute or section to be amended, the amending act must be confined to changes in· the provisions upon the subject dealt with in the original statute or section amended. If any new subject, germane to the subject dealt with in the original statute or section amended, is to be embodied in the amending act, the new subject to be dealt with must be mentioned in the title of the amending act.

Our conclusion is that Act No. 80 of 1916 is not applicable to this case, because the

estate consists entirely of the separate property of the deceased, and that therefore the surviving husband does not inherit as an heir of his deceased wife.

[3] The mother of the deceased is a forced heir, and therefore cannot be deprived, by the donation or bequest of $25,000, of any part of the share which she inherited in the estate of her deceased daughter. Revised Civil Code, arts. 1495, 1505. The brothers and sister are not forced heirs, and must therefore contribute to the payment of the legacy bequeathed to the surviving husband of the deceased. In this instance, the share inherited by the brothers and sister of the deceased is sufficient to pay the legacy in full.

[4] The only remaining question is whether the surviving mother inherited one-third and the brothers and sister two-thirds, or the surviving mother inherited one-fourth and the brothers and sister three-fourths, of the estate of the deceased.

The question arises from the fact that article 1494 of the Code, if applied literally to this case, would seem inconsistent with article 904 and with the second paragraph of article 911 of the Code.

Articles 903 and 904, in the section treating "Of Successions Falling to Ascendants," are as follows:

"Art. 903 (899). If any one dies leaving no descendants, but a father and mother and brothers and sisters, or descendants of these last, the succession is divided into two equal portions, one of which goes to the father and mother, who divide it equally between them, the other to the brothers and sisters of the deceased, or their descendants, as is prescribed in the following section.

"Art. 904 (900). If the father or mother of the person who has died without issue, has died before him, the portion which would have been inherited by such deceased parent, according to the terms of the preceding article, will go to the brothers and sisters of the deceased, or to their descendants, in the manner directed by the following section."

Article 911 (907), being the first article in the section treating "Of the Succession of Collaterals," merely repeats, in substance, the provisions of articles 903 and 904, viz.:

"Art. 911 (907). If a person dies, leaving no descendants, and his father and mother survive, his brothers and sisters, or their descendants, only inherit half of his succession.

"If the father or the mother only survive, the brothers and sisters, or their descendants, inherit three-fourths of his succession."

Articles 1493, 1494, and 1495, in the section treating "Of the Disposable Portion and the Legitime," are as follows:

"Art. 1493 (1480). Donations inter vivos or mortis causa cannot exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.

"Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

"Art. 1494 (1481). Donations inter vivos or mortis causa cannot exceed two-thirds of the property, if the disposer, having no children, leave a father, mother or both.

"Art. 1495 (1482). In the cases prescribed by the two last preceding articles, the heirs are called forced heirs, because the donor cannot deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them."

It is important to note that article 1494, which is relied upon by the surviving mother in this case, does not declare that the surviving mother or father, or both, shall inherit one-third of the estate of a deceased child, in a case where the deceased child has made a donation during his or her lifetime, or has left a will. The article merely declares, in negative terms, that a donation, made either during the lifetime of the donor or by a last will and testament, cannot exceed two-thirds of the property left by the donor at his or her death, if the donor, having no children, leaves a father or mother, or both. The article is not a prohibitory

statute, in the sense that a violation of it would make the donation null; for article 1502 (1489) declares that a donation, whether inter vivos or mortis causa, exceeding the portion of which the donor may legally dispose to the prejudice of the forced heirs, is not null, but is only reducible to the disposable portion. The language of this article is highly important, because it declares that an excessive donation should be reduced only to the extent to which it prejudices the rights of forced heirs. A forced heir is not prejudiced by a donation, either inter vivos or mortis causa, unless it encroaches upon the share which the heir would have inherited if the donation had not been made. In the case before us, the share which the surviving mother of the deceased would have inherited if the donation mortis causa had not been made is conceded to be only one-fourth of the estate. The amount of the donation is not near as much as three-fourths, or even two-thirds, of the estate. The donation will therefore be paid out of the share of the estate which would have been inherited by the brothers and sister of the deceased, if there had been no donation. The donation therefore cannot prejudice the right of the surviving mother as an heir; that is to say, it does not diminish the share which she would have inherited if there had been no donation. For this reason, counsel for the surviving brother and sister, and for the succession of the deceased brother, of the deceased Mrs. Greenlaw, contend that article 1494 of the Code is not at all applicable to this case. They contend that the article is applicable only to a case where a donation, inter vivos or mortis causa, exceeds two-thirds of the value of the estate of the donor at the time of his or her death. That is undoubtedly true; but counsel for the surviving mother of the deceased, Mrs. Greenlaw, invoke the provisions of article 1494 as having repealed or super-

seded the provisions of article 904 and the second paragraph of article 911 of the Code, in so far as the latter articles would otherwise be applicable to a testamentary succession; and counsel for the surviving mother cite three decisions rendered by this court, in support of their argument, viz.: Succession of Marks, 35 La. Ann. 993; Succession of Jacobs, 104 La. 447, 29 South. 241; and Succession of Desina, 123 La. 468, 49 South. 23. It is therefore necessary to decide whether the division of the residue of this estate shall be made according to article 904 and the last paragraph of article 911, or according to article 1494.

This question was presented first in the case of Heirs of Cole v. Cole's Executors, 7 Mart. (N. S.) 414. The deceased, Cole, had left a will giving his entire estate to his brother, and the only heirs at law were his brother and his mother. The case therefore came plainly within the provisions of article 1494 (then 1481) of the Code, if that article is applicable to a testamentary succession in which the deceased leaves no descendant heir and leaves only one surviving parent and a brother or sister, or descendant of a brother or sister.. The question in the case was whether the disposable portion of the estate was three-fourths or only two-thirds. The ruling was that the disposable portion was three-fourths, because the surviving mother would not have inherited more than one-fourth of the estate if there had been no will, and she was therefore not prejudiced by the will except to the extent to which it encroached upon the one-fourth which she would have inherited if there had been no will. That decision was rendered in 1829.

The question was presented again in the case of Barbet v. Roth, 14 La. Ann. 381 (in 1859). The deceased, Mrs. Roth, left a will making her husband her universal legatee. Her mother was the only heir at law. She

sued to reduce the donation to the disposable portion, which she contended was only two-thirds, not three-fourths, of the estate. The court agreed with her, because, as there was no descendant heir nor brother nor sister, nor descendant of a brother or sister, the surviving mother would have inherited the entire estate if there had been no will, and the donation or bequest in favor of the surviving husband therefore prejudiced her right as an heir, by giving away what she would have inherited if there had been no will. Article 1494 (then 1481) of the Civil Code was clearly applicable to the case, because it limited the amount which the deceased could dispose of to the prejudice of her surviving mother as a forced heir. Chief Justice Merrick, speaking for the court, affirmed the doctrine, announced in Cole's Heirs v. Cole's Executors, that, when the surviving father or mother of the deceased inherits jointly with a surviving brother or sister of the deceased, and would therefore inherit only one-fourth of the estate if there were no will, the disposable portion is the remaining three-fourths of the estate. But, said the court, if the surviving father or mother, or both, would inherit more than one-third of the estate in the absence of a will or donation, the disposable portion is only two-thirds of the estate, because the donation or testament would prejudice the surviving father or mother to the extent of the difference between one-third of the estate and the share which the surviving father or mother would inherit in the absence of a will, or donation, and the law puts that limit upon the right of a person to dispose of his property to the prejudice of his father or mother as a forced heir.

Another case in which article 1494 (1481) would be applicable, and would make the disposable portion two-thirds of the estate, is a case where both parents of the deceased survive him and inherit jointly with surviving brothers and sisters or descendants of them, in which case the surviving parents would inherit one-half of the estate if there were no will; and, though the law permits their right of inheritance to be prejudiced to the extent of the difference between one-third and one-half of the estate, it does not permit their right of inheritance to be further prejudiced by the testator or donor.

The doctrine, therefore, of the two decisions, the one in the case of Heirs of Cole v. Cole's Executors, and the other in the case of Barbet v. Roth, is simply this: The surviving father and mother of a deceased person are forced heirs for one-third of the estate in a case where the surviving father and mother, or either of them, would inherit more than one-third if there were no will or donation; but an heir cannot be a forced heir to a greater extent than he or she would inherit as an heir at law if there were no will or donation. There would have been no doubt about the correctness of that doctrine, as announced in the two decisions referred to, except for the fact that one of the justices, Mr. Justice Buchanan, in a concurring opinion in Barbet v. Roth, found fault with the opinion that had been delivered by Mr. Justice Porter in Heirs of Cole v. Cole's Executors. The learned justice, in his concurring opinion in Barbet v. Roth, declared that it seemed to him that there was a very simple and obvious way of reconciling articles 899 (now 903) and 900 (now 904) with article 1481 (now 1494) of the Code, which was to consider the two articles first mentioned as a statute of distribution for intestate successions, and to consider the article last mentioned as a statute of distribution for testamentary successions. The learned justice, however, overlooked or ignored the fact that article 1494 (then 1481) expressly applies to donations inter vivos, as well as to testamentary successions. He also overlooked or ignored the second paragraph of article 911 (then 907) of the Code. It is impossible to reconcile arti-

cle 904 (900) and the second paragraph of article 911 (907) with article 1494 (1481) by adopting the theory that the two articles first mentioned are statutes of distribution for intestate successions, and that the article last mentioned is a statute of distribution for testamentary successions. That theory would do violence to the precise language of the article last mentioned.

This question came before the court again in the Succession of Marks, 35 La. Ann. 993, decided in 1883. The deceased, Marks, left a will, making his widow his universal legatee. His heirs at law were his mother and his brothers and sisters. The mother sued to reduce the legacy to two-thirds of the estate, claiming that her legitime was one-third. Notwithstanding she would have inherited only one-fourth of the estate if there had been no will, the court allowed her claim for one-third of the estate. Chief Justice Bermudez, speaking for the court, adopted the concurring opinion, which had been delivered by Mr. Justice Buchanan in the case of Barbet v. Roth, and declared that article 904 (900) and the second paragraph of article 911 (907) were applicable only to an intestate succession, and that article 1494 (1481) was applicable to every testamentary succession in which the deceased was survived by his or her father or mother, even though the father or mother inherited jointly with brothers or sisters, and therefore inherited only a fourth of the estate.

There is one point upon which there can be no doubt of the correctness of the opinion delivered in the Succession of Marks, affirming the opinion expressed by Mr. Justice Buchanan in the Barbet Case; that is, that there is one condition under which article 904 and the second paragraph of article 911 of the Code are applicable, and under which condition article 1494 is not applicable; and there is another condition under which article 1494 is applicable and article 904 and the last paragraph of article 911 are not applicable. But the question whether article 904 and the second paragraph of article 911 shall apply, or whether article 1494 shall apply, does not depend upon whether the succession is a testamentary succession or an intestate succession; for article 1494, according to its plain terms, is applicable as well to an intestate succession (if the deceased made an excessive donation during his lifetime) as to a testamentary succession. The question whether article 904 and the second paragraph of article 911 are applicable, or whether article 1494 is applicable, depends upon whether the surviving father or mother would inherit as an heir at law more or less than a third of the estate if there were no will.

The illogical and astounding consequence of the ruling in the Succession of Marks came to light in the Succession of Jacobs, 104 La. 447, 29 South. 241. In that case, the testator left a will in which he bequeathed to his mother all that the law would have allowed her if there had been no will; that is, he gave her one-fourth of his entire estate. He bequeathed to his brother a special legacy of his interest in the capital stock in two corporations, and bequeathed to his wife the remainder of his estate. He was survived by his wife, his mother, his brother, and four sisters. There was no descendant heir. The mother brought suit against the widow and brother of the deceased, to reduce the legacies to two-thirds of the estate, claiming that she was a forced heir to the extent of one-third. Notwithstanding she was an heir at law for only one-fourth of the estate, and notwithstanding the will gave her exactly what she would have inherited if there had been no will, and notwithstanding, therefore, the will did not prejudice her right of inheritance as an heir at law, the court allowed her demand for one-third of the estate. It appears that the learned writer of the opinion, in the Succession of Jacobs, overlooked the fact that

the will did not prejudice the right of inheritance of the surviving mother of the deceased as an heir at law. For it was said, on page 457 of the opinion (104 La.), on page 245 of 29 South.:

"It is useless for us to discuss what might have been the rights of parties had the terms of the will been different from what they are —in other words, discuss a case where the disposition made of his property by the deceased would have been identical with the disposition made by the law itself in the case of intestacy. We have to take the facts and the will as we find them."

As far as the surviving mother was concerned, the disposition made of his property by the deceased, Jacobs, was identical with the disposition made by the law itself in the case of intestacy, because the mother, inheriting jointly with a brother and with sisters of the deceased, would have inherited only one-fourth of the estate if there had been no will; that is, the identical interest which the will gave her.

Of course, if article 1494 of the Code stood alone, or if it should be read without reference to any other provision in the Code, there would be an implication that a surviving father or mother, in the absence of descendant heirs of the deceased, would inherit as a forced heir one-third of the estate of his or her deceased son or daughter, even in a case where the surviving father or mother would inherit jointly with brothers and sisters of the deceased. But article 1494 does not purport to contain all of the law on the subject of the right of inheritance of a surviving father or mother of a deceased person; and it cannot be construed as if it stood alone. It must be read in connection with other articles on the same subject. Article 17 of the Code admonishes us that laws in pari materia, or upon the same subject-matter, must be construed with reference to each other, so that what is clear in one statute may be called in aid to explain what is doubtful in another. It is not logical, in fact not possible, to construe article 1494 so as to make a surviving father or mother a forced heir for a larger proportion of an estate then the proportion for which the surviving father or mother would be an heir at law if there were no will. We must consider, as if written in article 1494, the principle underlying the law which limits the disposable portion of an estate; and we must consider, particularly, as if written in article 1494, the provision expressed in article 1502, that the right of a forced heir to demand a reduction of an excessive donation, either inter vivos or mortis causa, is limited to that extent to which the donation prejudices the heir, by encroaching upon the share which he or she would inherit as an heir at law if there were no such donation. Above all, we must bear in mind the definition, and the simple meaning, of the term "legitime," or "reserved portion." It is defined in article 1498 of the Code, referring to the legitime or portion reserved for descendants, as "the legitime portion of which the testator is forbidden to dispose *to the prejudice* of his descendants." (The italics are ours.) Paraphrasing that definition, the legitime, or reserved portion, of a surviving father or mother of the testator, is "the legitimate portion of which the testator is forbidden to dispose *to the prejudice* of his father or mother." The legitime, or reserved portion, therefore, does not include any of that portion of the testator's estate which he may give away without prejudice to his child or father or mother; that is, without depriving such heir of any part of what he or she would inherit as an heir at law if there were no will. Bouvier defines the word legitime, as a civil law term, meaning "that portion of a parent's estate of which he cannot disinherit his children without a legal cause." Applied to a father or mother, the definition would be "that portion of a person's estate of which he cannot dis-

inherit his father or mother without a legal cause." The definition is taken from article 1495 of the Civil Code of Louisiana which declares:

."In the cases prescribed in the two last preceding articles [referring to article 1493, dealing with children, and article 1494, dealing with the father and mother of the deceased], the heirs are called 'forced heirs,' because the donor cannot deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them."

As a corollary, the disposable portion of an estate is that portion of which the testator may disinherit his children or his father or mother without cause. How can it be said, then, that a will or donation disinherits, or prejudices, the father or mother of the testator or donor, unless the will or donation encroaches upon the share which the surviving father or mother would inherit if there were no will or donation? The terms "legitime" and "reserved portion" are used in the Code as synonymous or convertible terms. There is nothing technical in the words "reserved portion." To reserve a portion of an estate to a particular person does not mean to give him a portion to which he would not be entitled without the so-called reservation. It means merely to maintain him, to the extent of the reservation, in whatever right he would have if the act done in contravention of the reservation had not been done. All of the articles of the Code on this subject are contained in chapter 3 of title 2, which chapter is entitled "Of the Disposable Portion, and of its Reduction in Case of Excess." The chapter is composed of only two sections. The first section treats "Of the Disposable Portion and the Legitime." The second section treats: "Of the Reduction of Dispositions Inter Vivos or Mortis Causa; of the Manner in Which It is Made; and of Its Effects." A careful reading of the headlines in this chapter, and a careful reading of each

one of the 26 articles in this chapter, being articles 1493 to 1518, inclusive, fails to disclose any implication that a forced heir shall inherit more, to the prejudice of an ordinary heir, in a testamentary succession, than the forced heir would inherit if there were no will or testament. Therefore it cannot be said, with reason, that article 1494 must be construed as having suppressed the provisions of article 904 and of the second paragraph of article 911, in the case of a testamentary succession, where the testator has left no descendants and is survived by only one of his parents and by brothers or sisters or descendants of a brother or sister.

It was said in the opinion delivered in the Succession of Marks that the doctrine of the decision in Heirs of Cole v. Cole's Executors, if adhered to, would "unmercifully expunge" from the Code article 1494. But that is not a correct statement, because, as was pointed out in the majority opinion in Barbet v. Roth, article 1494 applies to every case in which the surviving parent or parents of the deceased would inherit more than a third of his estate if there were no will. In fact, article 1494 remains applicable to every case where the deceased person has undertaken, by donation either inter vivos or mortis causa, to dispose of such proportion of his estate as to encroach upon the proportion which a forced heir would inherit if there were no donation. Article 1494 would therefore be applicable to a case where the deceased person, having no descendant heirs, is survived by his father or mother, who inherits jointly with brothers and sisters of the deceased person, if the deceased person had undertaken, by donation either inter vivos or mortis causa, to dispose of such a proportion of his estate as would encroach upon the one-fourth share which the surviving father or mother would inherit if there were no donation. On the other hand, the interpretation adopted in the Succession

of Marks of article 1494 would suppress the provisions of article 904 and the second paragraph of article 911, in every case in which the deceased has made a donation, be it ever so small, either inter vivos or mortis causa. And it would compel, not the donee, but the brothers and sisters of the deceased, and their descendants, to give a part of their inheritance to the surviving father or mother of the deceased, not for the purpose of reserving what the surviving father or mother would have inherited if there had been no will or donation, but for the purpose of increasing the share which the surviving father or mother would have inherited if there had been no will or donation. Surely the compilers of the Civil Code had no idea that article 1494 could have such an anomalous meaning or effect. To illustrate the anomaly that would result from the doctrine announced in the Succession of Marks and Succession of Jacobs: Suppose that the testator, in the case before us, or in either of the cases referred to, had desired merely to have his or her succession administered by an executor of his or her choice, instead of having it administered by an administrator appointed by the court; and suppose, therefore, the testator had, in the will, merely appointed an executor and directed him to pay the debts of the succession and deliver the residue of the estate to the heirs at law, in the proportion of one-fourth to the surviving mother and three-fourths to the surviving brothers and sisters, so as to give to each heir at law exactly what he or she would have inherited if there had been no will. Would this or any other court of justice hold that such a will should have the effect of giving the surviving mother of the deceased one-third, and the brothers and sisters of the deceased, only two-thirds of the estate, for the sole reason that the succession would then be a testamentary succession? We would be bound to so hold, or else reject the doctrine on which

alone is founded the concurring opinion delivered in Barbet v. Roth, and the ruling in Succession of Marks and Succession of Jacobs.

The theory announced by Mr. Justice Buchanan in his concurring opinion in the case of Barbet v. Roth, that is, that article 904 and the second paragraph of article 911 were statutes of distribution only for intestate successions, and that article 1494 was a statute of distribution for testamentary successions, was exploded in the Succession of Desina, 123 La. 468, 49 South. 23. The deceased, Mrs. Carmelite Desina Kurucar, during her marriage, inherited from the succession of her mother $33,119, which was paid to her in checks. She immediately indorsed the checks and handed them to her husband, who deposited them in bank to his own credit. Mrs. Kurucar was then under the age of 16 years. She died within a year after she had received the checks. She had no children. Her heirs at law were her father, a brother, and two sisters. She did not leave a will. Her father and one of her sisters were appointed and qualified as administrators of the succession, and they obtained an order of court, compelling the surviving husband, F. R. Kurucar, to disclose all property and money belonging to the succession. He showed that he had $6,105 deposited in bank to his own credit, real estate which he had bought in his own name for $8,500, and stock in a corporation which he had bought in his own name for $3,500. He claimed, however, that his deceased wife had donated to him, by manual gift, the checks representing $33,119, and that therefore the property which he had bought with part of that money, and the remaining cash in bank, belonged to him. The surviving father and brother and sisters of the deceased then brought suit to vindicate the title of her succession in the property and money claimed by the surviving husband. The plaintiffs al-

leged that the checks had been indorsed and given by Mrs. Kurucar to her husband merely for the purpose of depositing the proceeds to her credit, and not as a gift to the husband. In the alternative, plaintiffs contended that, if the indorsement and delivery of the checks by the deceased, Mrs. Kurucar, to her husband, constituted a donation inter vivos, it was null for the following reasons, viz.: (1) For want of form, not being evidenced by a notarial act; (2) for want of capacity on the part of the donor, who was under 16 years of age at the time of the alleged donation; and (3) because the alleged donation would have deprived the donor of all of her property. The father of the deceased alleged and contended, in the alternative, that, if the alleged donation should be declared valid, it was an encroachment upon his legitime, and should be reduced to two-thirds of the value of the estate of the deceased. The court concluded from the evidence that the indorsement of the checks and delivery to the husband constituted a donation by the wife to her husband, by manual gift, which did not have to be evidenced by a notarial act. The court said, citing articles 1476 and 1748 of the Civil Code, that the objection that the donation was made while the donor was under the age of 16 years would be conclusive if it were urged by the donor herself, but that the nullity of the donation was only relative, not absolute, and could not be urged by collateral heirs of the deceased. The court also held that the brother and sister, being collateral heirs of the deceased, had no right of action to have the donation declared null because it embraced all of the property of the donor, in violation of article 1497 of the Code. As to the father, who was a forced heir of the deceased, the court said that he had no interest in having the donation annulled, because its effect was to increase his right of inheritance from one-fourth to one-third of the estate.

The court acknowledged that that result was anomalous, but cited the Succession of Marks, 35 La. Ann. 993, as sustaining the doctrine that the surviving father or mother, who concurs with brothers and sisters of the deceased, inherits one-fourth if the child dies intestate, and one-third if the child left a will or made a donation inter vivos. The decision in the Succession of Marks was not founded upon that doctrine. It was founded upon the doctrine, first suggested by Mr. Justice Buchanan in his concurring opinion in Barbet v. Roth, that article 1494 of the Civil Code is a rule of distribution for testamentary successions in every case in which the testator, having no descendant heirs, is survived by his or her father or mother or both. The decision in the Succession of Desina, therefore, destroys the theory upon which Mr. Justice Buchanan undertook to reconcile the provisions of article 1494 with the provisions of article 904 and of the second paragraph of article 911 of the Code. And that theory was the only foundation upon which had rested the ruling in the Succession of Marks and the Succession of Jacobs. In the Succession of Desina, the court, referring to the "anomalous result" of the ruling in the Succession of Marks, said:

"Hence, in the case at bar, the father has no interest in contesting the validity of donations, the existence of which vests in him a larger portion of his daughter's estate than he would otherwise have inherited."

It was not essential that the donation should have redounded to his advantage, in order to deprive him of a right to complain of it. It was sufficient, to deprive him of a right to complain, that the donation did not operate to his disadvantage or prejudice. As a matter of fact, it did not operate to his prejudice or disadvantage, except in so far as it encroached upon that proportion of the estate, being one-fourth, which he would otherwise have inherited. His right of action

to reduce the donation to the disposable portion should have been maintained only to the extent to which the donation encroached upon the proportion which he would otherwise have inherited. He was allowed, nevertheless, to recover from the donee, not only what he, the surviving father of the deceased, would otherwise have inherited, but also a proportion of what the surviving brothers and sisters of the deceased would otherwise have inherited. The decision would have been wrong, and we would now overrule it, except for the fact, as stated in the opinion, that F. R. Kurucar, the donee, admitted in his answer to the suit that the surviving father of the deceased was entitled to one-third of the estate as his legitime, under article 1494 of the Civil Code.

We are constrained, however, to reject the doctrine on which alone was founded the decision in the Succession of Marks and Succession of Jacobs.

In a supplemental brief filed on behalf of the surviving mother, Mrs. Mary G. Mason, the following question is propounded, viz.:

"The fact that a portion of the estate has been bequeathed renders it impossible to make the division provided for in articles 903, 904, and 911 of the Revised Civil Code. How is it possible, for instance, to give the mother one-fourth and the brothers and sisters three-fourths of the estate when, already, under the will, a portion of the estate has been disposed of?"

Our answer is that the brothers and sister of the deceased are not forced heirs. They would have inherited three-fourths of the estate if the deceased had not left a will; but she was allowed to give away any or all of the three-fourths interest which would otherwise have been inherited by her brothers and sister. As to the surviving mother of the deceased, article 1505 of the Code explains that the disposable portion must be calculated upon the value of all of the property belonging to the donor or testator at the time of his death, including, of course, that which the testator undertook to dispose of by last will, and "to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation," from which total, of course, are deducted the debts due by the succession, before the legitime, or the disposable portion, is calculated. There is no necessity for such calculation in this case, because the legacy bequeathed by the will does not exceed the disposable portion. It must be paid from the portion of the estate which would otherwise have been inherited by the brothers and sister, who are not forced heirs, of the deceased.

It is ordered, adjudged, and decreed that the judgment appealed from be amended so as to allow the surviving mother of the deceased only one-fourth, instead of one-third, of the remaining property and assets of the succession of the deceased, Mrs. Kate McCan Greenlaw, after deducting all debts of the succession, but including in the calculation of the fourth of said estate the $25,000 legacy bequeathed to the surviving husband, and so as to allow the surviving brother and sister and the succession of the deceased brother of the deceased, Mrs. Greenlaw, each one-fourth of the property and assets of the succession, after paying all debts of the succession, from which three-fourths interest inherited by the two brothers and the sister of the deceased is to be paid the special legacy of $25,000 to the surviving husband, Edward R. Greenlaw. In all other respects the judgment appealed from is affirmed at the cost of the succession.

MONROE, C. J., takes no part.

PROVOSTY, J., concurs in the decree. See 86 South. 798.

DAWKINS, J., concurs in the decree and hands down reasons. See 86 South. 797.