ST. PAUL, J. I concur in the refusal to grant a rehearing for these reasons: That the rent note was withdrawn from the bank at which it was made payable on the day *before* the rent became due *according to the lease;* that thereafter no demand for payment of the rent was made either at said bank or elsewhere; and defendant was therefore not in default in the payment of the rent, since it was not required to seek out the holder of the note for the purpose of paying same. R. C. C. art. 2157.

---

(99 South. 416)

No. 25515.

Succession of DIELMAN.

(Jan. 21, 1924.    Rehearing Denied by Division A March 3, 1924.)

*(Syllabus by Editorial Staff.)*

1. Descent and distribution ⟨⟩23—Succession; adoption of child held not to affect rights of deceased's mother as forced heir.

Under Rev. Civ. Code, art. 214, providing that any person may adopt another as his child, but such adoption shall not interfere with the rights of forced heirs, the adoption of a child does not have the effect of eliminating the mother of deceased as a forced heir.

2. Descent and distribution ⟨⟩23—Succession; légitime of mother of deceased in entire estate determined as one-fourth and not one-third.

Where decedent died leaving his estate to his wife and adopted daughter, and there were no children of the blood, but deceased left a mother and sister, the portion of the mother as a forced heir was one-fourth and not one-third of the entire estate.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Proceeding in the succession of William H. Dielman, deceased, wherein Mrs. Mary M. Dielman intervened, claiming as forced heir against widow of William H. Dielman and Arthur W. Bearing, universal legatees. Judgment for defendants, and plaintiff appeals. Affirmed.

James Barkley Rosser, Jr., of New Orleans, for appellant Mrs. Mary M. Dielman.

Walter L. Gleason, of New Orleans, for appellees Widow of William H. Dielman and Arthur W. Bearing, universal legatees.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

DAWKINS, J. William H. Dielman died testate, and in his will, after making certain specific bequests, left the residue of his estate to his wife and an adopted daughter. There were no children of the blood but deceased left a mother and sister. The will was duly probated, and Mrs. Mary M. Dielman, mother of deceased, intervened in the succession, claiming to be a forced heir, and asked that the will be annulled in so far as it affected her légitime of one-third of the entire estate.

The wife and adopted daughter took the position that, first, the mother was not a forced heir because of the existence of a child, to wit, the adopted daughter; and, secondly, in the alternative, that the légitime consisted of only one-fourth.

There was judgment below in favor of the mother, sustaining her claim to the extent of one-fourth, and both sides have appealed.

## Opinion.

Only questions of law are involved, and they are:

First. Did the adoption of a child have the effect of eliminating the mother as a forced heir? and,

Second. If not, is the légitime of the mother one-fourth or one-third?

## Adoption.

[1] Article 214 of R. C. C. provides:

"Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; *but such adoption shall not interfere with the rights of forced heirs.* * * *

"The person adopted shall have all the rights of a legitimate child * * * *except as above stated.* * * *"

(Italics by the writer of this opinion).

Counsel for defendants argue that only "forced heirs" in the *descending* line are contemplated or included among those whose rights cannot be infringed upon by the adoption of another child or children, and that this construction is necessary to harmonize other provisions of the Code. In brief, it is said:

"That the lawmakers, in framing article 214 of the Code, had only in mind forced heirs in the descending line is strikingly illustrated by examples of the absurdities to which a contrary conclusion will lead. For illustration:

"If the court were to hold that article 1493 et seq. reserved to the mother a portion of the estate, where an adopted child existed, it would have to do so on one of two theories: Either that article 1494 of the Code itself reserves one-third to the mother; irrespective of any other provisions of the Code, or that, because of the provisions of article 214 of the Code, an adopted child was not assimilated to a legitimate child for the purpose of inheritance.

"If the first suggestion was adopted it would be in direct conflict with the decision in the Greenlaw Case, which is unquestionably sound. If the second theory were adopted we would have no law of distribution for the remaining two-thirds or three-fourths, as the case may be, of the estate.

"If the mother inherits one-third interest by article 1494, where is the provision whereunder the adopted child inherits the remaining two-thirds?

"If, as in the Greenlaw Case, the mother's right of inheritance, if such exists, is limited to the one-fourth because of the existence of a sister of deceased, wherein is the law of distribution as between the sister and the adopt-

ed child? The adopted child either excludes the other heirs under different lines in toto, or not at all, because the only provision of distribution in favor of the adopted child are those which distribute in favor of the legitimate child. Article 902 et seq.

"Inasmuch as article 1493 et seq. provides that the disposable portion cannot exceed two-thirds of the estate, if the donor have a child or a parent, and inasmuch as the disposition of the two-thirds can be made to an utter stranger, we will suppose that decedent made a will disposing of two-thirds of his estate to a stranger, leaving, at the time, an adopted child and a mother. What disposition is to be made of the remaining one-third? If the theory proposed, that article 1493 et seq. reserves the one-third to the mother as a forced heir, then the child is completely excluded from participating in the estate, notwithstanding the fact that by uniform jurisprudence the child is a 'forced heir,' as against strangers and collaterals. If, as in the aforesaid case, on the other hand, the adopted child is assimilated to a legitimate child and given the one-third remaining, the mother is completely excluded from participating in the succession, and as a consequence the entire jurisprudence of the state and all of the articles of the Code are harmonized; the words of article 214, assimilating an adopted child to the legitimate child, is given full force and effect, and the qualifition thereof 'providing that his right will not interfere with the rights of the forced heirs,' is completely harmonized by a limitation of 'forced heirs' to descendants, to which, by virtue of the said article, the adopted child is assimilated.

"Again, let us consider the disposition under chapter 3 of the Code (Irregular Successions).

"Under article 915 as it originally stood, a surviving spouse acquired the usufruct over all community property of decedent where there were neither ascendants nor descendants.

"Under article 916 of the Code a surviving spouse acquired the usufruct over the share of the issue of said marriage; in both instances however, subject to the proviso that decedent did not dispose of the community interest to the prejudice of the surviving spouse.

"In Succession of Teller, 49 An. 282 [21 South. 265], the adopted child is assimilated to the legitimate children, and the surviving spouse given the usufruct, and the share inherited by it as a forced heir. In the Succession of Moore, 40 An. 57 [40 La. Ann. 531, 4 South. 460], it was held that a disposition in the will confirmatory of the disposition of these articles is not a disposition destroying their efficacy.

"Suppose decedent left two children, legitimate issue of his marriage, and one adopted child, and also a parent, and left no will. Could it be held, under this and other articles of the Code and the jurisprudence, that the surviving spouse did not acquire the usufruct, and the share accruing to the adopted child, as well as the legitimate children? What, then, becomes of the ascendants? Surely the mere coincidence that the legitimate children inherited in conjunction with an adopted child cannot alter the law of distribution.

"Since the amendments to article 915 by Act 57 of 1910 (fully discussed) in the Greenlaw Case, the right of the parent to the share of the children in the community property is continued, but, in dealing with the interest that the parent of decedent has, the law is completely changed. Under this amendment, should the decedent leave no descendant, or should the adopted child not be considered as a descendant, and decedent leave a father or mother, or both, the mother or father would inherit only one-half of the community property. This creates an entire new distribution as far as the community is concerned.

"Under article 915 (as originally shown), the surviving spouse had no interest in the deceased's community half, when there were no descendants, but ascendants; the ascendants took that interest, either as a whole under the provision of article 905, or in conjunction with the sisters or brothers of the descendants, under the provisions of article 903 et seq.

"Suppose, then, deceased, having an adopted child and a mother, as in the instant case, made a will in which he confirmed to his wife all of the disposable portion under the law, and confirming to her the usufruct over the portion inherited by the adopted child. Surely there would have been no conflict in this disposition with article 915 of the Code as amended. Under the doctrine of Succession of Moore, supra, the disposition would be only confirmatory of the law.

"What, then, could the mother possibly take? If it be held that the mother acquired one-third under the provisions of article 1494, this would leave two-thirds to be divided between whom?

"As the disposition is merely confirmatory of the article, would it be held that the wife acquired three-sixths as her half under the amendment, and that the adopted child acquired only the other one-sixth? Wherein does the Code provide for such distribution? Yet this is the only method of distribution whereby the

adoptee is conceded any right as an heir, and the wife also given the one-half of the community property awarded to her by article 915 (as amended).

"We therefore respectfully submit that the more the situation is analyzed the easier it becomes to reconcile the provisions of article 214 with each other, as well as to reconcile the various provisions of the Code and the jurisprudence with this article by holding that the proviso that the adopted child "should have the rights of the legitimate child, except where the rights of forced heirs conflict, means only 'forced heirs' in the descending line, as they alone can have rights which may conflict."

Taking up the arguments in consecutive order, as to the suggestion that, "If the court were to hold that article 1493 et seq. reserved to the mother a portion of the estate, where an adopted child existed, it would have to do so on one of two theories: Either that article 1494 of the Code itself serves one-third to the mother, irrespective of any other provisions of the Code, or that, because of the provisions of article 214 of the Code, an adopted child was not assimilated to a legitimate child for the purpose of inheritance," it would seem sufficient to say that, in the circumstances mentioned, the mother would take her forced portion or légitime (the quantity of which will be dealt with in disposing of the second question presented in this case) and the adopted child, under the provision in said article 214 that it "shall have all of the rights of legitimate children, except as above stated," in the absence of a will, would by this express provision of law take all of the remainder of the estate, just as if he or she were a child of the blood. Its rights are made the same as those of legitimate children except that it cannot "interfere with the rights of forced heirs." The same answer applies to the question when a deceased leaves a mother, sister and adopted child; the mother would take her légitime and the adopted child the remainder, excluding altogether the sister, for article 214 places no other restriction or distinction upon the quality of an adopted child than that it shall not "interfere with the rights of forced heirs"; and it is clearly declared by the Code that legitimate descendants exclude collaterals.

With regard to the hypothetical case where the deceased left a mother and an adopted child, but disposed of two-thirds of his estate to a stranger (which we answer merely to show the fallacy of the argument and not as an authoritative decision of the issue, the same not being before us at this time), it may be said that the mother would receive her forced portion, and the adopted child be left to claim its légitime against the remainder. Of course, it is contended that there cannot be two classes or lines of forced heirs; but, in giving the right to adopt a child or children, article 214 does so with two conditions or results: The first being that it shall not "interfere with the rights of forced heirs"; and the second, that otherwise the adopted "shall have all the rights of legitimate children. * * *"

Therefore the adopter is forewarned of these results, and must be held to have consented to this further restriction upon his liberty of action with regard to his estate—that is, that his mother or father shall receive their portion, and, when this is taken out, his adopted child shall enjoy "all of the rights of a legitimate" child.

As to the remaining questions and suggested cases embraced in the quotations made from the brief above, we shall not indulge in a detailed analysis or discussion thereof; for they present questions which may be properly answered when and as they arise. But it is sufficient to say that by applying the letter of article 214, and allowing no discrimination against an adopted child, except that it "shall not interfere with the rights of forced heirs," we see no reason why all of the other provisions of the Code

applicable to legitimate children should not govern this artificial relation.

To adopt the construction contended for by defendant would have the effect of amending the Code to read that a child might be adopted "but such adoption shall not interfere with the rights of forced heirs *in the descending line.*" This, of course, we cannot do.

With regard to the citations from French Commentators, we find no provision in the French Code similar to that of our own, i. e., that the adoption of a child shall not interfere with the rights of forced heirs. On the other hand, article 350 of that Code provides:

"The adopted child shall not acquire any rights of succession to the property of the relatives of the adopter; but he shall have the same rights to the succession of the adopter as those which a child born in wedlock would have, *even if there were other such children born since the adoption.*" (Italics ours.)

And again, unlike our own, the French law denies to one who has "children" or "legitimate descendants" the right to adopt another. Hence, it is seen that, once an adoption is lawfully had, the French Code puts the adopted upon the same plane with legitimate children for all purposes.

### The Mother's Légitime.

[2] As to the second question presented in this case, after mature consideration, we feel constrained to follow the ruling made in Suc. of Greenlaw, 148 La. 255, 86 South. 786, and to hold that the mother's forced portion was one-fourth, instead of one-third; and for this reason, and for the reasons announced in that case, the judgment appealed from is affirmed, with costs.

Rehearing refused by Division A, composed of Chief Justice O'NIELL and Justices ROGERS and BRUNOT.