DOMENGEAUX, Judge.
This suit commenced by way of a concur-sus proceeding filed by John Vaccaro & Associates, and Themus Jeansonne, Jr., a subcontractor for Vaccaro, hereinafter referred to jointly as the employer, and their workmen’s compensation insurer, Tri-State Insurance Company, in order to determine how to divide workmen’s compensation benefits among the widow and dependents of an employee, Johnny Mason, who was killed when a load of logs shifted and struck him on October 4, 1977, while working in the course and scope of his employment.
Decedent left two sets of dependents. One set consists of three children born during his marriage with his first wife, Donna Wheeler Mason, from whom he was divorced at the time of the accident. The second set consists of two children of the second wife, Brenda Joyce Taylor Mason, born to her during a previous marriage, who were ■living with their mother and decedent at the matrimonial domicile when the fatal accident occurred. The second wife is also the surviving widow of the decedent.
The insurer invoked the concursus in order to protect itself from multiple liability in the matter, and deposited the sum of $95.75 per week, the amount of benefits which it determined were due, into the registry of the Court.
Made defendants in the concursus proceedings were the first wife, as the natural tutrix of her minor children, and the surviving widow, individually and in her capacity as the natural tutrix of her minor children. Both defendants filed answers into the proceedings, alleging that the sum deposited by the insurer was inadequate, and both sought penalties and attorney’s fees.
Prior to trial, the percentage of the compensation benefits due each of the claimants was agreed to out of Court by the attorneys. The case went to trial only on the issue involving the correctness of the dollar amount of benefits deposited by the insurer and on the issue of penalties and attorney’s fees.
After a hearing, the trial judge determined that the decedent was paid wages at the rate of $40.00 per day. Using La.R.S. 23:1021(7)(d), he found that decedent’s average weekly wage was $164.92. He took 65% of this amount, or $107.20, and divided it as agreed to between the parties, as follows: 32.5%, or $34.87 weekly, to the surviving widow, with the remainder divided among the children and stepchildren, or $14.47 each weekly. The trial judge specifically denied penalties and attorney’s fees. Judgment was rendered accordingly.
From this judgment, Donna Wheeler Mason, the first wife, appeals in her capacity as the natural tutrix of her minor children, contending that the trial judge should have applied La.R.S. 23:1021(7)(a), instead of La. R.S. 23:1021(7)(d), in the computation of the average weekly wage, and contending that the trial judge should have awarded penalties and attorney’s fees. The surviving widow, Brenda Joyce Taylor Mason, did not appeal. The employer and insurer did not appeal, nor did they answer the appeal.
*222 La.R.S. 23:1021(7) defines the term “wages” as the average weekly wage at the time of the accident, and sets forth various methods by which the average weekly wage should be computed. It provides:
“ ‘Wages’ means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by four; (c) If the employee is employed at an annual salary, his annual salary divided by fifty-two; and (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.”
It is appellant’s position that the evidence in the record indicates that decedent was paid an hourly, as opposed to daily, wage, and that, therefore, sub-part (a) of the statute should have been used in the calculation of benefits.
The evidence in the record consisted of the employer’s payroll records, the employer’s quarterly reports of taxable wages under the Federal Insurance Contribution Act, the employer’s quarterly report to the Louisiana Department of Employment Security, the cancelled paychecks of decedent, and the testimony of the sub-contractor-employer, Themus Jeansonne, Jr.
Jeansonne clearly stated at trial that the decedent was paid on a daily basis at a rate of $40.00 per day. He also explained that this was based on an eight hour work day. Jeansonne stated that occasionally weather conditions would not permit work for the full day and that, in these instances, he would pay for either a half a day or a whole day, depending upon the circumstances. On those occasions when decedent would stay on the job longer than the other workers, Jeansonne stated that he paid decedent extra.
Jeansonne’s payroll records listed decedent’s rate of pay at $40.00 per day. The quantum of work decedent performed was recorded in either whole days or increments of quarter days. There is no record of the number of hours decedent actually worked, nor any indication that an hourly record was kept.
We feel that, on the basis of the above facts, the trial judge was not in error by finding that decedent was paid on a daily, instead of an hourly, basis. The complete absence of any record listing the number of hours the employee worked, coupled with the fact that the employer listed decedent’s rate of pay at $40.00 per day on the payroll records, makes this conclusion obvious.
The fact that increments of quarter days were sometimes used makes this employee no less a daily wage rate worker than an employee whose salary is computed in increments of quarter hours is an hourly wage rate worker. There is, of course, a limit on how small the increments of a daily wage rate employee can be. For example, an employee who lists a worker at $40.00 per day for an eight hour day, and then computes the worker’s salary in increments of eights of a day, which would actually be one hour increments, would have a difficult time in arguing that the worker’s rate of pay was daily and not hourly. However, this is not the situation presented in this case. Thus, we conclude that the trial judge was correct in applying sub-part (d) instead of sub-part (a) in the calculation of decedent’s average weekly wage.
*223 However, although the trial judge was correct in applying sub-part (d), we feel that he erred in calculating the dollar amount of benefits due. Decedent worked for the employer from June 27, 1977, until the date of the‘fatal accident on October 3, 1977. The trial judge failed to include the wages paid decedent for the week ending September 22, 1977, in his calculations, apparently because the employer’s payroll sheet for that period was not contained in the record. However, the amount of wages earned by decedent for that period can be determined by subtracting the total amount of the employee’s earnings for the other pay periods of the third quarter of 1977 from the total amount reported for the employee for this quarter on the Quarterly FICA and Department of Employment Security forms filled out by the employer. Decedent earned $60.00 during this pay period. Additionally, the trial judge made a clerical error in reporting the wages for the week of September 9, 1977, as $80.00 instead of $95.00, which was the amount indicated on the employer’s payroll records.
The most significant problem, however, is in the method by which the trial judge computed the average weekly wage. When applying sub-part (d) of La.R.S. 23:1021(7), the trial judge divided the total gross earnings by the days and fractions of a day the employee worked. The fractions of a day that the employee worked were readily ascertainable in this case because the employer sometimes paid in fractions of a day, as indicated above. We do not feel, however, that fractions of a day should be used in the formula outlined by sub-part (d); instead, we feel that the calculation should be made in whole days only.
Sub-part (d) provides that the average weekly wage of an employee employed on any basis other than hourly, monthly, or annually, is computed by dividing the gross earnings for the twenty-six week period immediately preceding the accident by the number of days the employee actually worked for the employer, and multiplying the resultant quotient by four. If the employee worked for the employer for less than a twenty-six week period, the average weekly wage is computed by taking the gross earnings, dividing them by the number of days actually worked, and multiplying the resultant quotient by four.
By dividing the number of days worked into the total gross earnings, the formula derives an average daily wage. By multiplying the quotient by four, the formula derives an average weekly wage, based upon a four day work week. For unit, piece, or commission work, the formula results in changing the measure of salary from a unit, piece, or commission basis to a basis of time. The formula works well in these instances, because the individual productivity element is still present when the transformation from unit, piece, or commission is made to time. Obviously, an employee who works faster will earn more in the same period of time than an employee who works slower. Thus, given two employees who work at the same rate of pay, the employee who works faster should end up with a higher average weekly wage than the employee who works slower.
In actuality, therefore, the purpose behind the formula in sub-part (d) is simply to answer the question: What amount of money can a particular employee be expected to earn in any particular week, on the average?
When this purpose is kept in mind, it is apparent that the use of fractional days for a daily wage rate earner is incorrect. When one uses fractional days in the formula, the resulting figure does not yield the amount of money the particular employee could be expected to earn in a particular week on the average, because, when dividing the amount earned in a day by the fraction of the day required to earn it, the quotient, in mathematical terms, will yield the daily wage rate and not the average daily wage. Accordingly, when this quotient is multiplied by four, the resulting product is not the average weekly wage. The following example is illustrative:
Assume that there are two employees, A and B. Each is employed at a daily wage rate of $40.00 per day, and each works four *224 days per week. However A works full days and gels paid for full days. B works half days and gets paid only half of the daily wage. At the end of each week, A has weekly gross earnings of $160.00 (4 X $40.00); B, however, has gross earnings of only $80.00 (4 X xh X $40.00). Assume further that each is killed in the course and scope of his employment at the end of a four week period. Utilizing the formula in sub-part (d), A’s average weekly wage is $160.00. A’s total gross earnings, $640.00, is divided by the total days worked, 16, and the average daily wage would be $40.00. This, multiplied by 4, will yield an average weekly wage of $160.00. With regard to B, if one uses fractional days, B’s average weekly wage will also be $160.00. B’s total gross earnings, $320.00, would be divided by 16 one-half days, or 8 days, which will yield an average daily wage of $40.00. When this is multiplied by 4, the average weekly wage would be $160.00, despite the fact that B never earned close to $160.00 in any one-week period.
We do not think that this result is correct. A worked twice as much as B and, in actuality, earned twice as much as B while he was working. Yet both A and B will have the same average weekly wage for compensation purposes. The problem results from using fractional days in the calculation of B’s average weekly wage. If one, however, uses 16 days for B, because B was actually at work for 16 calendar days, the average weekly wage becomes $80.00, which is the correct sum.
We feel that the legislature did not intend to pass a statute which could lead to such results. Thus, we conclude that, when computing the average weekly wage under La.R.S. 23:1021(7)(d), the phrase “number of days the employee actually worked” refers to calendar days, and not to fractional days.
Turning to the record in the instant case, the employee had the following earnings:

Decedent began work on June 27, 1977, and was killed on October 4, 1977. Therefore, he worked less than a 26 week period, and his average weekly wage is computed by dividing his gross earnings, $1,319.00, by the days actually worked, 35, and multiplying the resultant quotient by 4. This procedure yields an average weekly wage of $150.76. Under La.R.S. 23:1232, the widow and children are to receive 65% of this amount, or $97.99 weekly. The stipulation entered into by counsel for the surviving widow and stepchildren, and counsel for the natural tutrix and children, provides that the surviving widow, Mrs. Brenda Joyce Taylor Mason, receives 32.5% of this amount, with the remainder to be divided equally among the children and stepchildren. Thus, the surviving widow should have received $31.85 weekly, and the five children and stepchildren should each have received $13.23 weekly.
However, inasmuch as the insurer and the employer did not appeal nor answer the appeal, we are powerless to reduce the amount of compensation awarded. La.C. C.P. Article 2133. We will affirm the judgment of the trial court with regard to the amount of benefits due.
The final matter deals with penalties and attorney’s fees. The trial judge denied an award of penalties and attorney’s fees, finding that the insurer’s actions were not arbi-
*225 trary, capricious, or unreasonable, under the circumstances presented.
The insurer in this case deposited the sum of $95.75 per week into the registry of the Court when it invoked the concursus. Upon the rendition of the judgment of the District Court, the insurer supplemented its deposits in order to meet the amount of benefits awarded by the trial court.
The record before us does not contain any evidence of a demand being made upon the insurer following the death of decedent, nor any evidence of the facts the insurer had before it at the time it began to deposit the weekly benefits into the registry of the Court.
Considering the totality of the circumstances presented in this case, we do not feel that the trial court was in error by failing to award penalties and attorney’s fees. See Campanella v. State, through the Department of Highways, 328 So.2d 798 (La. App. 1st Cir. 1976).
For the above reasons the judgment of the District Court is affirmed. All costs on appeal are assessed against the defendant-appellant, Donna Wheeler Mason.

AFFIRMED.

GUIDRY, J., concurs in the result.

. No explanation is found in the record as to why such a differing figure was paid.