410 So.2d 1224 (1982)
Mrs. Olga Clay CASTILLE, Plaintiff-Appellant,
v.
Michael MELANCON, Defendant-Appellee.
No. 8658.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
*1225 Corne & Block, Gerald J. Block, Lafayette, for plaintiff-appellant.
DeJean, DeJean & DeJean, Robert F. DeJean, Jr., Opelousas, for defendant-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
GUIDRY, Judge.
This is a suit for damages. Plaintiff, Mrs. Olga Clay Castille, instituted this action against the defendant, Michael Melancon, to recover damages for injuries and the wrongful death of her son, Donald Joseph Clay (hereafter Joe Clay) which resulted from an attack by defendant's doberman pinscher upon plaintiff's decedent. Mrs. Castille contends that Melancon committed an intentional tort when, without provocation, he ordered his dog to attack Joe Clay resulting in injury to Clay which ultimately resulted in his death several hours later. In the alternative, plaintiff contends that the decedent's injuries and death resulted from the gross negligence of Melancon in failing to maintain control of his domesticated animal.
Prior to trial, plaintiff filed a motion to compel discovery based upon defendant's failure to answer interrogatories propounded by plaintiff's counsel. On July 17, 1979, a judgment was entered by the district court which ordered the defendant to disclose the names of all witnesses to the facts and surrounding circumstances of the alleged tortious occurrence. Defendant complied with this order but failed to list Becky Hebert and Bernard Ortego as potential witnesses.
The case was tried to a jury which concluded that (1) the defendant did not intentionally harm the decedent; (2) defendant's domesticated animal did cause harm to Joe Clay; and, (3) the plaintiff is entitled to an award of damages in the sum of $10,000.00. A judgment consistent with the jury's verdict was signed on February 17, 1981. *1226 Thereafter, the plaintiff took this appeal. The defendant has neither appealed the judgment nor answered plaintiff's appeal.
The record discloses that on December 31, 1977, plaintiff's decedent, Joe Clay, a fifty year old, minimally retarded man, was "attacked" by defendant's doberman pinscher. The testimony is in conflict as to the exact manner in which Clay was injured. However, the record clearly reflects that as Clay was attempting to cross Highway 182 in Sunset, Louisiana, defendant's dog jumped and knocked Clay down in the middle of the highway. Shortly thereafter, Melancon regained control of his animal, and Clay walked to a nearby service station where he remained until the plaintiff picked him up and drove him home. Witnesses testified that following the attack, Clay was extremely pale and appeared frightened and nervous. Mrs. Castille stated that Clay had always had an extreme fear of dogs. Subsequently, Clay was examined and treated by his family physician, Dr. John Fruge. Dr. Fruge stated that Clay sustained a superficial scratch to his lower right leg as a result of the incident. Fruge testified that he cleaned the wound, applied a simple dressing, and administered two tetanus injections in treating the minor injury. Dr. Fruge stated that although the decedent appeared to be somewhat upset and agitated at the time of treatment, it was his opinion that Clay's emotional condition did not require the administration of a sedative. After receiving medical attention, plaintiff and Clay returned home. Mrs. Castille testified that she, her husband, and Clay ate dinner at about 5:00 p.m. after which Clay retired to his room for the evening. At 2:30 a.m. on January 1, 1978, plaintiff discovered that her son had died at some time during the night.
In addition to Dr. Fruge's testimony, two other medical expert witnesses testified at trial, Dr. Ronald N. Padgett and Dr. David G. Baker. Dr. Padgett, a pathologist, conducted Clay's autopsy. He testified that the cause of Clay's death was occlusion of the left anterior coronary artery. Padgett stated that the occlusion of the artery resulted partially from a thrombus (blood clot) and partially from an advanced stage of arteriosclerosis or hardening of the arteries, a disease commonly associated with the aging process. Dr. Padgett stated that any event which increases the heart's need for more oxygen could precipitate a heart attack in an individual suffering from occlusion of the heart's vessels. For example, Dr. Padgett stated that a frightful occurrence, any form of exercise, even simply walking down a street, could result in an increased need for oxygen to the heart.[1] Padgett also indicated that a thrombus, such as that experienced by Clay, does not occur immediately, but rather, may develop over a period of time. Dr. David G. Baker, a cardiologist, testified at trial that, after reviewing the decedent's autopsy report and death certificate and being informed of the dog attack on Clay the afternoon prior to his heart attack, it was his opinion to a medical certainty that Clay's heart attack resulted from the agitation and fright experienced by the decedent following the aforesaid attack.
In brief, plaintiff assigns the following errors:
(1) The jury erred in concluding that the defendant did not intentionally harm plaintiff's decedent.
(2) The trial judge erred in permitting the testimony of Becky Hebert and Bernard Ortego to be introduced at trial despite the alleged failure of defense counsel to disclose the names of the aforesaid witnesses pursuant to an order compelling discovery.
(3) The jury erred in awarding only $10,000.00 in damages to plaintiff.
Plaintiff contends that the jury erred in concluding that the defendant did not commit an intentional tort by allegedly "siccing" *1227 his doberman pinscher dog on the decedent.[2]
The defendant testified that prior to the incident, he and Clay had been drinking and socializing together at a local bar until such time as Melancon decided to go to his vehicle to obtain some money. As Melancon exited the bar, he passed Clay, who was standing at the door. Melancon stated that he unlocked his vehicle and pushed back the seat in order to get to the cash box he had placed in the backseat. As he did so, his doberman pinscher jumped out of the backseat where the dog had been confined for several hours. Melancon ordered the animal to get back in the vehicle, but the dog did not obey. Melancon stated that he then proceeded to obtain the money from the backseat of his vehicle when he heard someone call his name. When he looked up, he observed his dog jumping on the decedent as Clay attempted to cross the main street of Sunset. Melancon stated that he then immediately retrieved his animal.
Manual Garza, a dog training expert, testified that he examined the defendant's dog on three different occasions. Garza stated that after such examinations, he concluded that defendant's doberman pinscher was not trained to attack and was nothing more than a playful puppy. Garza testified that a dog trained to attack on command has the ability to inflict severe gashes, deep puncture wounds, and break bones. As previously indicated, the decedent suffered only a superficial scratch on his lower leg as a result of the alleged attack.
Plaintiff's witness, Marilyn Hossley, presented the only testimony indicating that the defendant intentionally harmed plaintiff's decedent by ordering his dog to attack Clay. Mrs. Hossley stated that she was standing at the doorway of her service station located nearby when she observed the defendant exiting the lounge. Hossley testified that apparently the defendant was teasing Clay by wearing his hat and refusing to give it back. After Clay retrieved his hat, he proceeded to walk toward her service station. Meanwhile, Mrs. Hossley stated, the defendant had opened the door to his vehicle, let his dog out, and ordered the dog to "Get him." Hossley testified that the dog thereafter "attacked" plaintiff's decedent.
After hearing all of the testimony presented at trial, the jury concluded that the defendant did not intentionally harm plaintiff's decedent. In so concluding, the jury was presumably influenced by the distance between Hossley and the defendant at the time Hossley allegedly heard the defendant order his dog to "Get him", as well as the similarity in sound of the words "Get him" and "Get in", especially at such a distance. The jury's conclusion as to the non-intentional nature of the defendant's acts is a finding of fact. As such, the jury's conclusion may not be disturbed on appeal absent a finding of clear error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La. App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975). After reviewing the testimony and evidence presented at trial we conclude that the jury did not commit clear error in concluding that the defendant was not guilty of committing an intentional tort.
Plaintiff alleges that the trial court erred in admitting the testimony of Becky Hebert and Bernard Ortego despite the alleged failure of defense counsel to disclose the names of the aforesaid witnesses pursuant to an order compelling discovery.
LSA-C.C.P. Article 1471 provides in pertinent part:
"If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to *1228 testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1469 or Article 1464, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
* * * * * *
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." (Emphasis ours)
The clear language of the statute above set forth indicates that the imposition of any sanctions for the failure of a party to comply with an order compelling discovery is discretionary on the part of the trial court. In Viator v. Sonnier, 355 So.2d 1091 (La. App. 3rd Cir. 1978), our court stated in regard to LSA-C.C.P. Article 1471:
"The above article provides various sanctions that may be imposed by the trial judge for the failure to obey a discovery order. These sanctions should not be incorporated in the order. These sanctions are discretionary and may be imposed by the court if the order is disobeyed without justification."
The decision to permit the introduction of testimony by Hebert and Ortego was clearly within the discretion of the trial court. We discern no error on the part of the trial court in permitting the introduction of testimony by the aforesaid witnesses.
The final issue on appeal is whether or not the jury's award of damages in the sum of $10,000.00 is so inadequate as to constitute a clear abuse of that body's wide discretion.
After evaluating the evidence and testimony presented at trial, the jury returned a general verdict which stated that although the defendant did not intentionally harm Joe Clay, he caused "harm" to Clay by failing to maintain control of his dog. The jury's verdict failed to specify what type of harm was caused by defendant.
If we were to presume that the jury concluded that the harm caused by Melancon consisted only of the superficial scratch sustained by Clay and the extreme fright experienced by plaintiff's decedent as a result of his encounter with defendant's dog, we might conclude that the award of $10,000.00 is excessive. However, as stated previously, Melancon has neither appealed from that judgment nor answered plaintiff's appeal requesting modification of the jury's award, therefore, such award may not be reduced. See Tri-State Insurance Company v. Mason, 369 So.2d 220 (La.App. 3rd Cir. 1979); LSA-C.C.P. Art. 2133. In light of the sum of damages awarded, the jury must have concluded that Clay's encounter with defendant's dog contributed to Clay's death several hours following the alleged attack. Therefore, we consider the issue of quantum in light of a factual finding that there existed causal connexity between the disputed incident and the ultimate death of plaintiff's decedent.
In considering the propriety of the jury's award in this case, we are guided by certain legal principles governing appellate review of damage awards. It is well settled that before an appellate court may disturb an award made by a jury, an abuse of discretion by the trier of fact must be clearly reflected by the record. See Reggans v. Aetna Casualty & Surety Company, 308 So.2d 898 (La.App. 2nd Cir. 1974), writ refused, 310 So.2d 642 and 310 So.2d 646 (La.1975). As stated by this court in Fowler v. Western Union Telegraph Company, 357 So.2d 1305 (La.App. 3rd Cir. 1978),
"The phrase `abuse of discretion' is at best an elusive term that is subject to varying interpretations. We note that in Coco [v. Winston Industries, La., 341 So.2d 332] supra, the Supreme Court stated that a determination as to whether or not an abuse of discretion exists is a `judgment call'."
The jury awarded $10,000.00 to plaintiff for the wrongful death of her son, Joe Clay. Plaintiff contends that this award is grossly inadequate and refers this court to other awards for wrongful death in support of her contention. We agree that such award is low, however, we conclude *1229 that under the particular circumstances of this case, the award cannot be considered below the lowest amount the trier of fact could reasonably have awarded.
Plaintiff's decedent, Joe Clay, was fifty years old at the time of his death. Clay was considered minimally retarded and was never gainfully employed. He resided with his mother and stepfather in Sunset, Louisiana, where he spent the majority of his time visiting local business places and socializing with various townspeople. Medical testimony received at trial revealed that Clay suffered from arteriosclerosis, possessed a history of high blood pressure, and was undergoing treatment for severe emotional problems. Treatment of Clay's mental condition included the administration of strong psychotrophic drugs. We note that Clay's undiagnosed heart condition predisposed him to a heart attack which could occur without warning at any time.
Additionally, the record reflects that the defendant's ability to pay an award of damages is greatly limited. Melancon testified that he works as a carpenter's helper, but due to the present litigation, he was, at the time of trial, unemployed. In addition, defendant stated that he does not own a car, possess any real estate, or have any money in the bank. Our courts have held that a defendant's ability to pay is a factor to be considered in awarding damages. Barrett v. State Farm Mutual Automobile Insurance Company, 236 So.2d 900 (La.App. 3rd Cir. 1970); Rollins v. New York Fire and Marine Underwriter's Inc., 225 So.2d 663 (La.App. 3rd Cir. 1969), writ refused, 254 La. 855, 227 So.2d 595 (1969). Clearly, Melancon's ability to pay is limited, and presumably, the jury properly considered this in deciding the issue of quantum of damages. As aforestated, although we consider that the jury's award borders on the low side of the spectrum, we conclude that under the circumstances, the jury's award is not lower than the lowest amount that could be awarded under the present facts, and thus, is not a clear abuse of the wide discretion afforded juries in determining damage awards.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I agree with the majority opinion but have some reservations concerning the reasons given for affirming the amount of damages awarded. I concur in the affirmance of the award on the ground that the defendant was unable to pay more than the award.
NOTES
[1] Witnesses testified that prior to the alleged attack, Clay had been drinking and dancing at one of the local bars.
[2] Presumably, the plaintiff sought a finding to this effect because of the well-established rule that a debt for injury by the debtor to the person or property of another which is proved to be intentional on the part of the debtor is considered a "nondischargeable debt" under the laws regulating actions in bankruptcy. See 9A Am.Jur.2d § 804.