187 So.2d 201 (1966)
Donald E. LEIDIG, Divorce Plaintiff (Nullity Defendant)-Appellee,
v.
Peggy Jo Crouch LEIDIG, Divorce Defendant (Nullity Plaintiff)-Appellant.
No. 1717.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1966.
Garland, DeJean & Ledet, by H. B. DeJean, Jr., Opelousas, for defendant-appellant.
Lloyd E. Hennigan, Jr., Lake Charles, for plaintiff-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
A wife appeals from the dismissal of her petition to annul a judgment of divorce obtained by her husband. She contends, inter alia, that she had not been served with process and given notice of the divorce suit as required by law, and that the judgment should be annulled for this ill practice. See LSA-C.C.P. Arts. 2002, 2004.
In the initial divorce proceedings the judgment awarded the husband custody of the two minor children of the marriage. His wife was not served, nor did she have notice of the institution of the divorce action until after the husband attempted to execute the custody judgment. The husband contends that the judgment was validly obtained by service upon and contradictory proceedings against an attorney appointed to represent the wife as an absentee, see LSA-C.C.P. Arts. 5091-5095, even though the wife did not receive the notice sent to her by the attorney-curator.
Pursuant to the husband's allegation in the divorce petition that the wife was absentee, *202 an attorney at law had been appointed to represent her in the divorce proceedings filed on September 17, 1963. The attorney immediately addressed by certified mail, return receipt requested, a letter to the wife at her "last known address" as given him by the husband's petition, whereby the attorney-curator informed the wife of the institution of the divorce and custody action and of her right to defend same. On October 5th the post office department returned this letter "Unclaimed". After due proof, at a hearing at which the wife's attorney-curator appeared and cross-examined the husband's witnesses, judgment in favor of the husband was rendered and signed on October 17th.[1]
Subsequently, after an attempt was made in January 1964 to execute the custody judgment and remove her children from her, the wife on March 6, 1964 filed this action of nullity in the divorce proceedings. During the pendency of this action the execution of the custody judgment was stayed. Other grounds are alleged, but we think that it suffices to state that she contends that the divorce judgment should be annulled or is a nullity because the notice sent her but returned by the post office was sent to a defunct address, whereas her husband knew or could reasonably have discovered her whereabouts so that she could have been served with the petition and have had notice of and an opportunity to defend the suit.
Article 7 of the husband's petition for divorce alleged:
"Defendant is an absentee from the State of Louisiana and it is therefore necessary that a curator ad hoc be appointed to represent her in the premises and upon whom citation may issue and service of process be had. Defendant's last known address is C/o Mrs. Sarah Bowdre, 1635 6th Street, New Orleans, Louisiana." (Italics ours.)
The evidence taken at the suit to annul the divorce judgment shows this allegation to be completely inaccurate.
In the first place, the so-called "last known address" of the wife represented only her mother's address as of 1961 and possibly 1962. When suit was instituted in 1963, the wife's mother was living on Carrollton Avenue in New Orleans, Louisiana, as the husband knew, see his testimony at Tr. 82-83 (see also wife's testimony at Tr. 106, 114). Immediately prior to the divorce suit, in fact, an investigator had talked with the wife's mother when he telephoned her in New Orleans to find out where the children were, Tr. 151-152; at this time, the wife's mother's correct mailing address could presumably have been discovered.
In the second place, the address of the wife last known by the husband was at the Shamrock Club in Opelousas, where she had been working since 1961. The husband stated that he thought she might have left this address in mid-1963, based upon an investigator's anonymously-based statement she had gone temporarily to Texas. However, the testimony of the wife, of her landlady, and of a St. Landry Parish deputy sheriff, all prove without contradiction that the wife had been living in Opelousas in St. Landry Parish (just ninety miles from Lake Charles where suit was filed) from the time she and her husband separated in 1961 up through the annulment trial in *203 1963, with at the most only several weekends away.
To her husband's knowledge, the wife had worked as a "hostess" at this nightclub of unrespectable reputation, both during an earlier separation and then from 1961-1965. The husband had gone to this nightclub to speak to his wife two or three months before filing the divorce suit in 1963. He testified that he was told at the nightclub that his wife was not there and for him to stay away; but, as he admitted, he had then gone to the sheriff's office, where he had been informed that any divorce proceedings filed by him and sent to their office would be served upon his wife. Tr. 75-76, Tr. 147. The deputy sheriff himself also testified to this effect.[2]
LSA-C.C.P. Art. 5091 pertinently provides that a court with jurisdiction may appoint an attorney to represent a "nonresident or absentee" defendant. Since when the divorce suit was filed the defendant wife was domiciled and actually present in Louisiana, under the present facts she would be an "absentee" only if she was "a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort * * *." LSA-C.C.P. Art. 5251(1).[3] Actually, since no effort was made to accomplish service upon her, for her to be an absentee she must have been a person "whose whereabouts are unknown" at the time of suit.
In support of his contention that the wife was an absentee as a person of "whereabouts" unknown, the husband testified that he had been unable to locate her. He produced as a witness a private investigator who immediately before suit had visited Opelousas to locate the wife, going to the nightclub and also questioning other people in that city, all without success. However, we need not decide at this time whether in fact a wife, whom to the knowledge of the husband could be located through a local sheriff's office, can legally be considered as absentee of whereabouts unknown because unofficial investigative efforts could not determine her precise location.
Pretermitting whether attempted service in St. Landry Parish was required under the particular facts shown, we think it is sufficient to hold that, under the evidence, this timely-filed action in nullity has *204 proved that the divorce judgment of October 17, 1963 should be annulled under LSA-C.C.P. Art. 2004 as obtained by ill practice.[4]
The ill practice consisted (a) of the false allegation that the wife's last known address was at her mother's home on 6th Street in New Orleans, when in fact her last known address was at the Shamrock Club in Opelousas (and when in fact even the wife's mother's last known address was on Carrollton Avenue in New Orleans, not 6th Street), and (b) of failing to furnish to the attorney-curator appointed to defend the wife the information known by the husband that a deputy sheriff of the St. Landry Parish sheriff's office had stated that service of divorce papers upon the wife would be made by that office if the suit papers were forwarded to it.
If any of this information known to the husband had been furnished by him to the attorney-curator, service of the petition upon the wife or notice to her could reasonably have been accomplished. At least, the attorney-curator would have been in a position to communicate successfully with the wife through a more recent address of herself or her mother.
To the contrary, however, through no fault of the curator (nor of the husband's attorney) in relying upon the husband's information as to the wife's "last known address", the wife had no more chance of receiving notice of the divorce and custody action through the notice sent to the defunct address than if the communication to her had been dropped in a waste paper basket in the curator's office. By the husband's incorrect information and his reticence concerning more recent facts as to the wife's whereabouts, she was effectively deprived of receiving notice of the divorce suit filed against her and effectively deprived of any real chance to defend it.
Under LSA-C.C.P. Art. 2004, an ill practice justifying annulment of a judgment encompasses situations where the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, if the enforcement of the judgment would be unconscientious and inequitable, even though no actual fraud or intentional wrong is shown in the procurement of the judgment. Official Revision Comment (b); St. Mary v. St. Mary, La.App. 3 Cir., 175 So.2d 893, and decisions therein discussed. The jurisprudence has considered conduct which unfairly prevents the opposing party from having his day in court to urge his defenses as an ill practice justifying annulment of a judgment so obtained. Alonso v. Bowers, 222 La. 1093, 64 So.2d 443; Hall v. Hall, La.App. 2 Cir., 127 So.2d 347.
For the reasons stated, therefore, the judgment of the district court dismissing the plaintiff's suit is reversed; there is judgment in favor of Peggy Jo Crouch Leidig, the petitioner in the action in nullity, and against Donald E. Leidig, defendant therein, annulling the judgment of divorce and custody dated October 17, 1963, in the suit entitled "Donald E. Leidig v. Peggy Jo Crouch Leidig", Docket No. 59,318, Fourteenth Judicial District Court. All costs of these proceedings to date are to be paid by the husband-appellee.
Reversed and rendered.
NOTES
[1] We should here remark that the attorney-curator for the wife performed his duties conscientiously, and that the wife's failure to receive notice was due only to the circumstance that the information given the curator was incorrect as to the wife's last known address, the curator being furnished no other information as to the wife's current address despite his query for same when the letter returned. We may also add, before discussing the matter further, that the evidence indicates that the attorney for the husband was in good faith in bringing suit against the wife as an absentee, based upon information given him by the husband (which, however, as we will show, neglected to include some relevant information whereby the wife could have been located and valid service obtained upon her).
[2] See deputy's testimony at Tr. 88:

"Q. Would you tell the court under what circumstances you saw Mr. Leidig, and where?
"A. I saw him in my office. He came in and wanted to talk to me about a divorce. He was trying to locate his wife, and he asked me if I knew her. I said I don't think I know her, so I
"Q. Did he mention the name Peggy Jo Leidig at that time?
"A. Yeah. I told him I didn't know the lady by name. I asked him where she was working at, and he told me she was working at the Shamrock; so I left him in my office and I stepped in the next office adjoining, where I called the Shamrock, and asked if they had somebody by that name working there. And they told me yes, and I said, well did anybody go over there to talk to her; and they said yes, her husband was there about an hour or so prior to that. So I came back in and I told Mr. Leidig that this was the sheriff's office, and if he wanted a divorce to come back to Lake Charles and get his attorney to draw up the necessary papers and mail them to this office, the sheriff's office, and we would serve them on her.
"Q. And you say this was in the summer of 1963?
"A. Yes, sir. [Earlier he had placed the incident as `June or July' of `63.]"
[3] LSA-C.C.P. Art. 5251(1) provides in full: "`Absentee' means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown." (Italics ours.)
[4] LSA-C.C.P. Art. 2004 provides in full:

"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."