425 So.2d 263 (1982)
Betty Ann Shroyer WEST, Plaintiff-Appellee,
v.
Marjorie Nell Savoie Royer GAJDZIK, Defendant-Appellant.
No. 82-311.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearing Denied February 4, 1983.
*264 Brame, Bertstedt & Brame, James R. Morris, Lake Charles, for defendant-appellant.
Charles E. McHale, Jr., New Orleans, for plaintiff-appellee.
Before DOMENGEAUX, FORET and LABORDE, JJ.
*265 FORET, Judge.
Betty Ann Shroyer West (plaintiff) brought this action to be recognized as the sole forced heir of decedent, Bob B. Royer, and to annul the judgment of possession rendered on April 15, 1977, in Succession of Bob B. Royer, Docket No. 15,203, 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Named defendant is Marjorie Nell Savoie Royer Gajdzik, decedent's wife at the time of his death, who was made the universal legatee of decedent's property by testamentary disposition.
The trial court, after trial on the merits, rendered judgment in favor of plaintiff and against defendant, annulling and setting aside the above mentioned judgment of possession. The trial court further rendered judgment recognizing plaintiff as decedent's sole forced heir and, as such, entitled to an undivided one-third interest in the estate left by him upon his death.
Defendant appeals and raises the following issues:
(1) Whether the trial court erred in finding that plaintiff's action was subject to the prescriptive period set forth in LSA-C.C. Article 3548 (30 years), rather than that of LSA-C.C. Article 3542 (5 years); and, if so,
(2) Whether plaintiff may take advantage of the doctrine of contra non valentem to suspend the running of prescription; and,
(3) Whether the trial court properly annulled the judgment of possession under the provisions of LSA-C.C.P. Article 2004.

FACTS
Plaintiff is a person of age and a resident of the State of Michigan. She is decedent's only child, having been born of his first marriage to Gertrude E. Mills. Defendant was decedent's fourth wife. Decedent left a testament in statutory form in which he willed and bequeath his entire estate to defendant, and in which he named her as his executrix.
Decedent died in Calcasieu Parish on January 1, 1972, and defendant filed a petition some two weeks later to have the testament admitted to probate. The trial court, after finding that the testament complied with the requirements of law, issued an order directing that decedent's testament be filed and recorded, and executed according to law with the right of defendant to qualify and be appointed executrix of decedent's will in the event she deemed an administration of the succession to be necessary. Defendant paid the inheritence taxes due on the succession property and managed it for over five years before taking any further legal steps.
Defendant filed a "PETITION FOR POSSESSION" on April 15, 1977, in which she prayed for judgment recognizing her as the surviving spouse in community with decedent, and sending her into possession as owner of an undivided one-half interest in the property formerly constituting the community of acquets and gains. Defendant further prayed for judgment recognizing her as the sole heir and legatee of decedent, and sending her into possession as owner of the property constituting decedent's estate. The trial court rendered an ex parte judgment of possession as prayed for by defendant.
Plaintiff filed a "PETITION TO ANNUL JUDGMENT AND FOR RECOGNITION AS FORCED HEIR" on February 23, 1981, after learning of the death of her father a couple of months earlier.

APPLICABLE PRESCRIPTIVE PERIOD
Defendant contends that the trial court erred in finding that the 30-year prescriptive period of LSA-C.C. Article 3548 was applicable to plaintiff's action, and that said action had not prescribed. Defendant argues that plaintiff's action is one for the reduction of an excessive donation, which is subject to the five-year prescriptive period provided for in LSA-C.C. Article 3542.
The trial court, in its written reasons for judgment, stated:
"Defendant relies on Louisiana Civil Code Article 3542 stating that the 5 year prescriptive *266 period has lapsed and plaintiff cannot reduce the mortis causa donation. By looking at Civil Code Article 3548, it is apparent that when an entire succession is donated, a 30 year prescriptive period is applicable, not the 5 year prescriptive period, used in Article 3542. The Article cited by defendant relates to a reduction of a donation, an impingement on the legitime, not a complete disposition of the entire estate."
LSA-C.C. Article 1502 provides, in pertinent part:
"Art. 1502. Reduction of excessive donations
Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum."

Succession of Smith, 182 La. 389, 162 So. 21 (1935), noted on page 25 that:
"It thus appears that this court has consistently held that when a testator undertakes to disinherit a forced heir and disposes of the estate to his prejudice, the testator has done nothing except to make a disposition of property mortis causa, exceeding the quantum he may legally dispose of to the prejudice of forced heirs; that an attempted disinherison of a forced heir and bequeathing the entire estate to some one else does not strike the testamentary dispositions with nullity, but merely subjects these donations mortis causa to an action for the reduction thereof by a forced heir whose legitime has been ignored or impaired; and that such an action is barred by prescription of five years."
See also In re Andrus, 221 La. 996, 60 So.2d 899 (1952); Roach v. Roach, 213 La. 746, 35 So.2d 597 (1948); Draper v. Van Leer, 197 La. 259, 1 So.2d 513 (1941).
Prescription begins to run against an action to reduce an excessive donation on the date that the testament is filed for probate. Draper v. Van Leer, supra; Succession of Dancie, 191 La. 518, 186 So. 14 (1939); Perrodin v. Clement, 254 So.2d 704 (La.App. 3 Cir.1971), writ denied, 256 So.2d 642 (La.1972).
It is our opinion that the trial court incorrectly characterized plaintiff's action as one for an entire succession. No attack is made on the validity of decedent's testament, and plaintiff seeks only to recover her legitime. We can construe this action in no other way than one from the reduction of an excessive donation. Thus, the 5-year prescriptive period of LSA-C.C. Article 3542 is applicable. Decedent's testament was filed for probate on January 11, 1972, and plaintiff's action for the reduction of an excessive donation has prescribed unless the running of prescription was interrupted or suspended.

CONTRA NON VALENTEM
Defendant contends that the doctrine of contra non valentem is unavailable to plaintiff to suspend the running of prescription because her ignorance of her father's death resulted from her own neglect and failure to use reasonable diligence to attempt to ascertain that fact.
LSA-C.C. Article 3521 provides that prescription runs against all persons unless they are included in some exception established by law. Despite this express statutory provision, our Louisiana jurisprudence has recognized a limited exception where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Corsey v. State, Dept. of Corrections, 375 So.2d 1319 (La.1979).
Reynolds v. Batson, 11 La.Ann. 729 (La. 1856), authoritatively lays down the three categories of situations in which our early jurisprudence held that the principle of contra non valentem applied so as to prevent the running of liberative prescription:
(1) Where there was some legal cause which prevented the courts of their officers from taking cognizance of or acting on the plaintiff's action;
(2) Where there was some condition coupled with the contract or connected with the proceedings which prevented *267 the creditor from suing or acting; and
(3) Where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action.
Corsey v. State, Department of Corrections, supra.
Modern jurisprudence also recognizes a fourth type of situation where contra non valentem applies so that prescription does not run:
Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. Corsey v. State, Dept. of Corrections, supra; Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970); Sumerall v. St. Paul Fire & Marine Ins. Co., 366 So.2d 213 (La.App. 2 Cir.1978).
Plaintiff was twelve years old when she last saw decedent alive in 1938. Plaintiff had no further contacts with decedent thereafter. Her parents had obtained a divorce when she was three years old and plaintiff has always lived in and around the Detroit area since that time. She was adopted by her stepfather, Forrest J. Sparks, when she was fifteen years old, and was married to her present husband, Harry West, when she was eighteen years old. Decedent and his second wife lived in South Bend, Indiana, until plaintiff was approximately twelve years old, and then he began moving around the country. Plaintiff testified that, after decedent moved from South Bend, she was never given a definite address or location where he could be contacted. She did recall that decedent had attended his father's funeral in South Bend in 1961, but stated that she had been unable to attend the funeral as she was notified too late of the death. She did attend her paternal grandmother's funeral approximately four or five months later, but decedent failed to do so. Plaintiff testified that she had no contact with decedent's brother or sister after 1961, although Lorabell Worthington, decedent's sister, did have her telephone number and address in Detroit. She stated that she first learned of her father's death when she was contacted by Frank Spalitta in December of 1980. Spalitta had been hired by certain third parties to locate plaintiff to obtain her signature on a quit claim deed to certain property they desired to purchase, which had been a part of decedent's estate. Plaintiff testified that no members of decedent's family had contacted her to inform her of decedent's death in 1972. Her understanding of why her father had never contacted her after she was twelve was that he was very upset over the fact that she had been adopted by her stepfather. She knew of none of decedent's marriages subsequent to his second one. She also had no knowledge of the fact that decedent had changed his name from Argus Schroyer to Bob Royer in December of 1952.
Frank Spalitta testified that his occupation was real estate title research. His occupation includes the location of missing heirs. The only information he was given at first, to help in his attempt to locate plaintiff, was a copy of the proceedings in Succession of Bob B. Royer, supra. Spalitta was able to locate plaintiff within two or three days using this very limited information and the telephone. He stated that it was one of the easiest cases he had worked on. Spalitta testified that, as far as he could tell, plaintiff knew nothing of her father's death until he informed her of that fact. Plaintiff, under a proffer of proof, placed in the record a statement to the effect that Spalitta would testify that it was his impression that plaintiff had no knowledge of her father's whereabouts until he informed her of such in December of 1980. Spalitta had an extensive conversation with plaintiff at this time, and stated that plaintiff gave him the impression that she was hurt by what she believed to be her father's intention to avoid her completely.
*268 It is our opinion that the doctrine of contra non valentem is applicable here and had the effect of suspending the running of prescription until plaintiff learned of her father's death in December of 1980. Plaintiff did not know that she had a cause of action for a reduction of the excessive donation made by her father until then, and she could not have learned by reasonable diligence of the existence of said cause of action. Plaintiff's ignorance is not attributable to her own wilfulness or neglect.
We also find another basis for the application of the doctrine of contra non valentem. Defendant and her attorney both admitted that decedent had told them that he had a child by a previous marriage. Defendant stated that, to her knowledge, decedent had made no attempt to contact plaintiff, while he was alive and married to her. After their marriage, defendant and decedent traveled to South Bend to visit decedent's brother and sister. Defendant testified that she had contacted Mrs. Worthington to tell her of her brother's death, but had no subsequent conversations with her. Defendant corroborated plaintiff's testimony that she had not seen her father since she was twelve years old. Defendant stated that the main reason she made no effort to contact plaintiff after decedent's death was that she did not want plaintiff to share in her father's estate.
Frank Brame, defendant's attorney, was called as a witness by plaintiff. He testified that he handled most of decedent's legal matters after decedent arrived in this State in 1951. He represented decedent in his action to have his name changed. He had contacted Mrs. Worthington in April of 1973, and she gave him the last known address she had for plaintiff. It was either at this time, or a short while thereafter, that Mrs. Worthington informed him of plaintiff's name. She also told him that plaintiff had married Harry West, and that as far as she knew, they were living in Detroit. Brame admitted that he advised defendant not to attempt to locate plaintiff. He also advised defendant that she would have no duty to contact plaintiff, regarding her father's death, if she did not qualify as executrix of decedent's will. Brame stated that he told defendant that if plaintiff failed to appear and file suit within five years from the date decedent's will was filed for probate, then her claim to decedent's estate would prescribe and defendant would be entitled to the entire estate. Brame testified that he made no effort to contact plaintiff.
The doctrine of contra non valentem has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other ill practices) which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing suit is not wilful or the result of his own negligence. Nathan v. Carter, 372 So.2d 560 (La.1979); Cartwright v. Chrysler Corporation, supra; Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916); Dufrene v. Tracy, 232 La. 386, 94 So.2d 297 (1957); Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951). The equitable nature of the circumstances in each individual case has determined the applicability of the doctrine. Nathan v. Carter, supra; Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.App. 1 Cir.1970).
There is no doubt on the part of this Court that defendant engaged in acts (amounting to concealment and ill practices) which tended to hinder, impede, and prevent plaintiff from asserting her cause of action. We have already found that plaintiff's delay in bringing suit was not wilful, nor the result of her own negligence. The equitable nature of the circumstances of this case compel the application of the doctrine of contra non valentem.
For these reasons, it is our opinion that the trial court correctly found that plaintiff had brought her action within the prescriptive period allowed.

*269 APPLICABILITY OF LSA-C.C.P. ARTICLE 2004[1]
Defendant contends that the trial court erred in applying the provisions of LSA-C. C.P. Article 2004 to annul the judgment of possession rendered in her favor. Defendant first argues that the jurisprudence interpreting this article has extended it beyond its intended scope by failing to require a finding of intentional wrongdoing. Defendant cites no authority in support of this argument, and we find no merit in it. Defendant then argues that LSA-C.C.P. Article 2004 is inapplicable to this case because the article is equitable in nature and equity can only be resorted to where there is no express, positive law on the subject. Defendant asserts that LSA-C.C. Article 3542 is express, positive law on the subject matter of this action.
We are unable to agree with defendant's argument. LSA-C.C.P. Article 2004 provides plaintiff with a separate and distinct cause of action to nullify the judgment of possession unrelated to her action for the reduction of an excessive donation.
A forced heir has a cause of action to annul an ex parte judgment of possession depriving him of his legitime, rendered in a succession proceeding in which his existence is concealed from the court by fraud or ill practice by a party to the succession proceeding, separate and distinct from the heir's action to reduce an excessive testamentary donation. Schoen v. Burns, 321 So.2d 908 (La.App. 1 Cir.1975); Succession of Hearn, 412 So.2d 692 (La.App. 2 Cir. 1982), writ denied, 415 So.2d 215 (La.1982). There is no merit to defendant's argument.
Finally, defendant argues that the trial court committed manifest error in finding that her actions constituted "ill practices" sufficient to annul the judgment of possession. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980), noted on pages 401 and 402 that:
"Louisiana Code of Civil Procedure, art. 2004, provides that "A final judgment obtained by fraud or ill practices may be annulled." The action provided by this article is not a substitute for an appeal from a judgment that might be erroneous due to insufficiency of evidence or misinterpretation of substantive law, but, rather, is a separate remedy designed to afford relief against a judgment procured by methods viewed with disdain by the judiciary. Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (La.1949); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); Alleman v. Guillot, 225 So.2d 607 (La. App. 1st Cir.1969), writ ref. 254 La. 858, 227 So.2d 596. In discussing "ill practices" under the Code of Practice, art. 607, the predecessor of La.C.C.P. art. 2004,[1] this Court stated in Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (La.1953):
"Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment."
"This language has been clarified to mean that there need not necessarily be a showing of intentional fraud or wrongdoing for a plaintiff to prevail. Even innocent acts which deprive a party case [sic] in judgment of some legal right can form the basis of this nullity action. Leidig v. Leidig, 187 So.2d 201 (La.App. 3d Cir. 1966); Collins v. Collins, 325 So.2d 773 (La.App.2d Cir.1976); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir.1963), writ den. [245 La. 640] 160 So.2d 228 (La.1964)."
Our analysis of the evidence clearly indicates that it would be inequitable and unconscionable to allow the judgment of possession *270 to stand in view of the practice or procedure which enabled defendant to obtain that judgment. We certainly view the method by which that judgment was procured with disdain. The trial court's finding, that the actions of defendant in obtaining the judgment of possession constituted ill practices sufficient to annul that judgment, is correct.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] "Art. 2004. Annulment for vices of substance; peremption of action

A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."