JASPER E. JONES, Judge.
This appeal arises from the succession proceedings of the decedent Lonnie Cup-ples. The plaintiff-appellee is Debra Cup-ples Miller, the decedent’s niece. The defendants-appellants are the decedent’s surviving spouse, Alice Cosper Cupples, and the decedent’s stepson, George R. Mc-Adams. By judgment rendered January 14, 1988, the trial court granted the plaintiff’s motion for summary judgment and recognized her as owner of an undivided one-eighth interest in the property of the decedent. We amend this judgment for the reasons explained below and as amended we affirm.
Lonnie Cupples died on April 7, 1980. Lonnie had no descendants. He was survived by his father, Ivy Cupples; his wife, Alice Cosper Cupples; three sisters, Hazel Cupples McGurk, Betty Cupples Greene, and Francine Cupples Gandy; and a brother, Marshall Cupples.[1]
*1187 Lonnie’s estate consisted of both separate and community property. In his will, Lonnie made special bequests to his wife, Alice, and left the remainder of his estate to his stepsons, George R. McAdams and James McAdams, Alice’s children by a previous marriage. The law in effect at the time of Lonnie’s death, discussed infra, provided that Ivy was Lonnie’s forced heir. Lonnie made no bequest in his will to his father Ivy, thereby creating an impingement on the legitime.
The testamentary heirs petitioned the court for probate of the will on April 21, 1980. A judgment of possession was rendered on October 29, 1980, which recognized Alice Cupples and George McAdams as Lonnie’s legatees and further placed them in full ownership of Lonnie’s estate as per the provisions of the will.[2]
Ivy Cupples died intestate on May 24, 1980, slightly over a month after his son Lonnie died. Ivy’s children which survived him were Hazel Cupples McGurk, Betty Cupples Greene,[3] Francine Cupples Gandy, and Marshall Cupples.
Marshall Cupples died on May 13, 1981. He was survived by one descendant, Debra Cupples Miller, the plaintiff herein. On March 15, 1984, plaintiff filed a petition to reopen the succession of her uncle, the deceased Lonnie Cupples. By this petition and later amended petition, she attacked the judgment of possession as incorrect because it did not recognize Ivy Cupples as Lonnie’s forced heir, entitled to a legitime of one-fourth of Lonnie’s estate. She alleged upon Ivy’s death, his heirs, Francine, Betty, Hazel, and Marshall, were each transmitted one-fourth of Ivy’s interest in Lonnie’s estate. Plaintiff further alleged when her father Marshall died on May 13, 1981, she was transmitted his interest. Plaintiff prayed the disposable portion of Lonnie’s estate be reduced to three-fourths of the total estate and the judgment of possession be amended to declare that one-fourth of Lonnie’s estate was inherited by the heirs of Ivy Cupples.
On August 7, 1987, the plaintiff filed a motion for partial summary judgment and for sanctions for the defendant’s failure to comply with the trial court’s discovery order. Attached to this motion plaintiff filed an act of assignment executed by Hazel McGurk which purported to convey to the plaintiff Hazel’s interest in her late brother Lonnie’s estate.
On September 1, 1987, a hearing on plaintiff’s motion for summary judgment was conducted. On the morning of the hearing, for the first time, counsel for the defendants sought to oppose the motion for summary judgment and introduced an affidavit, signed by defense counsel, attesting that Hazel McGurk and Betty Greene had executed acts of renunciation in the succession of their late brother and that these acts were filed in the probate proceedings. Attached to the affidavit were xeroxed copies of these renunciations dated June 16, 1980. These renunciations recognized that Ivy R. Cupples survived his son Lonnie Cupples; that he left four children, two of which were Betty and Hazel; and that Betty and Hazel renounced the succession of their deceased brother Lonnie Cupples. The defendants sought the introduction of these renunciations with the apparent intention of invalidating Hazel’s act of assignment filed August 7, 1987. The trial court sustained plaintiff’s objection to the introduction of these documents as untimely on the basis of LSA-C.C.P. art. 966.[4]
*1188 On January 14, 1988, the trial court rendered judgment recognizing the plaintiff as entitled to an undivided one-eighth interest in the property of the decedent Lonnie Cup-pies. The trial judge did not explain how he reached this result but no doubt he determined plaintiff was entitled to one-sixteenth in her own right and entitled to one-sixteenth by virtue of the assignment from Hazel, which therefore entitled the plaintiff to a one-eighth interest. The trial judge necessarily concluded the renunciation of Hazel filed on the date of the hearing was not part of the record and for this reason was not to be considered in the determination of the summary judgment. The trial court denied a motion for new trial filed by the defendants. The defendants now appeal the judgment rendered on January 14 and the plaintiff has answered the appeal.
On June 6, 1988, the defendants filed a plea of prescription in the court of appeal urging the right of Hazel McGurk to assign her interest in Lonnie’s estate was prescribed. This exception of prescription was referred to the merits of the appeal by order signed by this court June 30, 1988.
The contentions of these litigants in brief and the record present the following issues for review in consideration of the summary judgment granted January 14, 1988:
(1) Did the trial court err in the determination of Ivy’s forced portion;
(2) Did the trial court err in refusing to allow the defendants to introduce the renunciations executed by Hazel McGurk and Betty Greene;
(3) Did the trial court err in recognizing Hazel McGurk’s act of assignment as valid, thereby conveying an additional interest in the estate of Lonnie Cupples to her niece, the plaintiff;
(4) Did the trial court err in failing to impose sanctions for the defendants’ failure to timely comply with the trial court’s order to respond to the plaintiff’s discovery requests.
The appellants concede Ivy was a forced heir of Lonnie because no descendants survived Lonnie and as such was entitled to his legitime at the time of Lonnie’s death. It is not disputed that the dispositions in the will operated to the prejudice of Ivy and his right of action to reduce the donations mortis causa to the disposable portion should be maintained.
All litigants cite and rely upon Holcomb v. Baker, 459 So.2d 158 (La.App. 2d Cir.1984), writ den., 462 So.2d 196 (La.1984) for the proposition that Ivy was entitled to one-fourth of Lonnie’s estate as his forced portion. The judgment recognizing the plaintiff as owner of an undivided one-eighth interest in Lonnie’s property is also predicated upon this assumption.
In the determination of Ivy’s forced portion, we first note Ivy, from whom the plaintiff traces her interest in Lonnie’s estate, was a forced heir only to Lonnie’s separate estate under the applicable law in effect at the time of Lonnie’s death on April 7, 1980. By Acts 1979, No. 778, § 1, the amendment to LSA-C.C. art. 1494 eliminated parents as forced heirs to a deceased child’s community property. See footnote # 9 infra. Parents’ forced heirship rights remained viable as to separate property of the deceased child. The act became effective September 7, 1979 and amended LSA-C.C. art. 1494 to provide at the time of Lonnie’s death:
Art. 1494. Disposable portion when parents survive
Art. 1494. With respect to separate property, donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.[5]
To determine the forced portion of the surviving parent in a testate succession, it must be determined what the parent *1189 would have received in the absence of a will. This rule is found in the rationale pronounced in Succession of Greenlaw, 148 La. 255, 86 So. 786 (1920), wherein the court opined a parent should receive no greater amount as a forced portion in a testate succession than he would have received as a legal portion in an intestate succession.
We note had Lonnie died intestate Ivy’s legal portion would have included both community and separate property. LSA-C.C. art. 915[6] then in effect provided where the decedent left no descendants, the decedent’s share of the community was divided between the surviving parent or parents and the surviving spouse. This fact does not enter into the equation determinative of Ivy’s forced portion because of the cited legislative enactment which abolished parents’ forced heirship rights to the community property of the decedent.
The devolution of the separate property of the decedent in an intestate succession is pertinent. The surviving wife was not an heir to the separate property of her husband’s intestate succession at the time of Lonnie’s death except in cases where he was not survived by descendants, ascendants, nor collateral relations. Because Lonnie was survived by his father, an ascendant, his surviving spouse would not have been an heir to his separate estate if he had died intestate. LSA-C.C. art. 924;[7] Succession of Evans, 171 So.2d 738 (La. App. 1st Cir.1965). We must determine how Lonnie’s separate estate would have been divided if he had died intestate in order to determine Ivy’s forced portion under the Greenlaw rule. As in effect at the time of Lonnie’s death, the provisions of LSA-C.C. art. 911 applying to the disposition of separate property in the absence of descendants in intestate successions are applicable. LSA-C.C. art. 911 then provided:
Art. 911. Inheritance by brothers and sisters sharing with parents
Art. 911. If a person dies, leaving no descendants, and his father and mother survive, his brothers and sisters, or their descendants, only inherit half of his succession.
If the father or the mother only survive, the brothers and sisters, or their descendants, inherit three-fourths of his succession.[8]
Articles 1494 and 911 cited above are to be read in pari materia. LSA-C.C. art. 13; Succession of Greenlaw, supra. In the absence of a will, where a single parent survives, along with the decedent’s brothers and sisters or their descendants, the legal portion inherited by the surviving parent is limited to one-fourth of the decedent’s separate property under article 911. Article 1494 provided that where the legal portion is less than one-third the forced portion due the surviving parent is not raised to one-third of the decedent’s separate property, but remains at the legal portion which here is one-fourth of the decedent’s separate property. At the time *1190 of Lonnie’s death, Ivy was entitled as forced heir to no more than one-fourth of his son Lonnie’s separate property. This determination is in accord with the rules pronounced in Succession of Greenlaw, supra.
Holcomb v. Baker, supra, is cited by all the litigants for the proposition that Ivy is a forced heir to one-fourth of Lonnie’s estate which includes community and separate property. The statement contained in Holcomb v. Baker to the effect that the mother is entitled to one-fourth of the estate of the decedent who died July 4, 1981 was based upon LSA-C.C. art. 1494 as existed prior to the 1979 amendment. In light of the fact that Holcomb died subsequent to the amendment, which excluded community property from parents’ legi-time, any community property he may have had would not have been included within the forced portion of his mother. We cannot determine from the opinion whether there was any community property involved in this succession. The rule enunciated in the decision does not state that the mother was a forced heir to only the decedent’s separate estate and in this sense the rule is incorrect or at least incomplete and we decline to apply it in this case.[9] The judgment appealed recognizing the plaintiff as owner of an undivided interest in the decedent’s property is incorrect. The plaintiff’s interest herein is restricted to Lonnie’s separate estate.
Ivy was entitled as forced heir at the time of Lonnie’s death to one-fourth of Lonnie’s separate estate. Pursuant to LSA-C.C. art. 944,[10] Ivy’s heirs, at the moment of his death, each inherited the right to exercise one-fourth of their father Ivy’s rights as forced heir. Upon Marshall’s death, plaintiff in turn was transmitted her father’s right. Because of this fact, the plaintiff is entitled to receive one-fourth of Ivy’s forced portion.
The renunciations executed by Hazel McGurk and Helen Greene were properly not considered by the trial court. Although executed in June of 1980, these renunciations were never filed in the probate proceedings. Defense counsel first sought their introduction attached to an opposing affidavit on the morning of the hearing on the motion for summary judgment held September 1, 1987. The trial court correctly sustained plaintiff’s objection to their introduction as untimely pursuant to LSA-C.C.P. art. 966(B) cited supra, which requires opposing affidavits to be filed prior to the date of the hearing. See footnote #4.
The trial judge, in his determination of the plaintiff's interest in her uncle’s estate, was required to rely on the record before him. This record was bereft of these renunciations at the time the trial court ruled on the motion for summary judgment. The plaintiff’s argument in brief on appeal that she benefitted from these renunciations will therefore not be addressed.[11]
*1191 Remaining for our resolution is whether or not the trial court was in error in granting the plaintiffs motion for summary judgment on the face of the record before him. A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Summary judgment is warranted only when reasonable minds must inevitably conclude the mover is entitled to judgment as a matter of law on the facts before the court. The mover bears the burden of showing there is no genuine issue of material fact and any doubt is resolved against granting summary judgment. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). See also LSA-C.C.P. arts. 966, 967.
The defendants filed in this court a timely plea of prescription pursuant to LSA-C. C.P. art. 2163 urging Hazel McGurk’s right to reduce which she attempted to assign has prescribed under LSA-C.C. art. 3497.[12] This article provides an action for the reduction of an excessive donation prescribes in five years. Prescription commences upon the date the will is filed for probate. West v. Gajdzik, 425 So.2d 263 (La.App. 3d Cir.1982), writ den., 428 So.2d 475 (La.1983). The defendants argue article 3542 renders the conveyance ineffective as Hazel’s right to reduce has prescribed.
There are some factual circumstances wherein the right to seek a reduction in an excessive donation does not prescribe in five years. The doctrine of contra non valentem suspends the running of prescription with regard to an action for reduction of an excessive donation. See West v. Gajdzik, supra (prescriptive period under 3542 suspended where plaintiff did not know and could not have learned by reasonable diligence of her cause of action for reduction); Succession of Hearn, 412 So.2d 692 (La.App. 2d Cir.1982), writ den., 415 So.2d 215 (La.1982) (the judgment of possession is subject to an action for nullity under LSA-C.C.P. art. 2004 and the running of prescription under LSA-C.C. art. 3542 is suspended until the date of discovery of the fraud or ill practice).
The mover’s documents relied on in support of her motion for summary judgment do not establish facts which would suspend or interrupt the five-year prescriptive period and for this reason the plea of prescription as applicable in the motion for summary judgment is good and as a matter of law the plaintiff is not entitled to a summary judgment recognizing her as owner of Hazel’s undivided one-sixteenth interest in the succession of Lonnie.
The plaintiff’s final argument concerns the trial court’s denial of that portion of plaintiff’s motion for summary judgment requesting sanctions against defendants for their failure to timely comply with the trial court’s discovery order. Under LSA-C.C.P. art. 1471, the imposition of any sanctions for failure of a party to comply with a discovery order is within the discretion of the trial court and will not be disturbed on appeal in the absence of a manifest abuse of discretion. Castille v. Melancon, 410 So.2d 1224 (La.App. 3d Cir.1982); Butts v. Cummings, 360 So.2d 534 (La.App. 2d Cir.1978).
The judgment rendered January 14, by its ommission of reference to sanctions, indicates the trial court denied that portion of plaintiff’s motion for summary judgment. Review of the transcription of the hearing on the motion indicates the trial court acknowledged the defendants’ failure to timely comply with the discovery order. However, the trial court expressed reluctance to impose sanctions as defendants mailed responses to the requests for admissions to plaintiff’s counsel and further the defendants admitted everything in their response. We find no error and will not disturb the trial court’s ruling on this point.
For the reasons expressed above we conclude plaintiff’s sole interest in the succession of Lonnie Cupples to which she is *1192 entitled to summary judgment is that which she inherited from her father Marshall Cupples. This inherited interest is one-sixteenth of Lonnie’s separate estate. See LSA-C.C. art. 872 for definition of estate.[13] We amend the January 14, 1988 judgment granted in favor of the plaintiff and delete paragraphs 1, 2 and 3, and substitute for them the following paragraph:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of the plaintiff Mrs. DEBRA CUP-PLES MILLER and against the defendants Mr. GEORGE R. MCADAMS and Mrs. ALICE COSPER CUPPLES amending the judgment of possession rendered October 29, 1980 in the succession of LONNIE L. CUPPLES to reflect that the plaintiff Mrs. DEBRA CUPPLES MILLER is the owner of an undivided one-sixteenth (½6) interest in the separate estate of Mr. LONNIE L. CUPPLES. The defendants are cast for all costs below and on appeal.
AS AMENDED the judgment is AFFIRMED.

. Lonnie’s father Ivy was not made a party to the probate proceedings. None of Lonnie’s sib *1187 lings were made a party to the probate proceedings nor were they joined as parties in plaintiff’s suit for reduction by service of a copy of the suit upon them.

.By act of conveyance executed October 3, 1980, James Douglas McAdams, Lonnie’s stepson also named as legatee in his will, assigned his interest in his step-father’s property to his brother George McAdams. Alice Cosper Cup-ples renounced her usufruct over certain community and separate property bequeathed her in the will by authentic act dated October 8, 1980. These documents were filed in the probate proceedings attached to defendant’s petition for possession on October 29, 1980.

. Betty died on December 7, 1985. Carmen Rhame, Betty’s daughter, was not made a party to these proceedings.

. LSA-C.C.P. art. 966(B) provides, in part:
... The adverse party may serve opposing affidavits prior to the date of the hearing ...

. Article 1494 was repealed by Acts 1981, No. 442, § 1, thereby abolishing the forced heirship rights of parents. The repeal became effective for those persons whose date of death is sifter December 31, 1981.

. Article 915 was revised and incorporated in LSA-C.C. art. 889. This article changed the law with respect to the disposition of community property, as the surviving spouse now succeeds to the deceased’s share of the community in the absence of descendants.

. As amended by Acts 1979, No. 607, § 1, article 924 at the time of Lonnie’s death provided:
Art. 924. Inheritance rights between spouses
Art. 924. If a married man has left no lawful descendants nor ascendants, nor any collateral relations, but a surviving wife not separated from bed and board from him, the wife shall inherit from him to the exclusion of any illegitimate child or children duly acknowledged.
If, on the contrary, it is the wife who died without leaving any lawful descendants, ascendants, or collateral relations, her surviving husband not separated from bed and board from her, shall not inherit from her, except in case she should leave no illegitimate child or children by her duly acknowledged.
The article was later revised to reflect a change in the law and incorporated in LSA-C.C. art. 894 by Acts. 1981, No. 919, § 1. LSA-C.C. art. 894 now provides:
Art. 894. Separate property; rights of surviving spouse
If the deceased leaves neither descendants, nor parents, nor brothers, sisters, or descendants from them, his spouse not judicially separated from him shall succeed to his separate property to the exclusion of other ascendants and other collaterals.

.Article 911 was repealed by Acts 1981, No. 919, § 1 effective for those persons whose date of death is after December 31, 1981.

. Prior to the 1979 amendment, LSA-C.C. art. 1494 recognized a sole surviving parent or parents as forced heirs to the deceased child's community and separate property and provided:
Art. 1494. Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.
The decedent in Holcomb v. Baker died on July 4, 1981. The 1979 amendment eliminating parents’ forced heirship rights to community property but retaining these rights as to separate property was in effect.

. LSA-C.C. art. 944 provides:
Art. 944. Seizin; transmission of succession rights to heirs of heir
The heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor.

.The plaintiff in brief asserts the vitality of these renunciations and further contends they inure to her benefit by way of the doctrine of accretion under LSA-C.C. art. 1498. We doubt the article is to be so construed, as any renunciation by Hazel or Betty or any of Ivy’s heirs would seem to have been on Ivy’s behalf under LSA-C.C. art. 944, just as if he himself had renounced, and the interest so renounced would have first inured to the benefit of Ivy’s co-heirs of the same degree.

. Article 3497 replaced former LSA-C.C. art. 3542 pursuant to Acts 1983, No. 173, § 1, but did not affect the substantive law.

. As provided in LSA-C.C. art. 872:
Meaning of estate
The estate of a deceased means the property, rights, and obligations that a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether he has only left charges without any property. The estate includes not only the rights and obligations of the deceased as they exist at the time of death, but all that has accrued thereto since death, and the new charges to which it becomes subject.